UNITED STATES of America,
Plaintiff-Appellee,

v.

Armond Gaylord OLIPHANT,
Defendant-Appellant.

No. 74–3502.

United States Court of Appeals,
Ninth Circuit.

Oct. 14, 1975.

Rehearing Denied Nov. 24, 1975.

Certiorari Denied March 22, 1976.
See 96 S.Ct. 1473.

Martin F. Jennings, Jr. (argued), Sacramento, Cal., for appellant.

Bruce Babcock, Jr., Asst. U.S. Atty. (argued), Sacramento, Cal., for appellee.

## OPINION.

Before CHAMBERS, KILKENNY and TRASK, Circuit Judges.

CHAMBERS, Circuit Judge.

Oliphant appeals his conviction, after jury trial, of one count of mail theft, in violation of 18 U.S.C. § 1708. He contends on appeal that the district court improperly admitted evidence as to his "prior misconduct" and improperly instructed the jury on the culpability of one who aids and abets in the commission of a felony. We affirm.

The mail was taken on August 4, 1973, from a letter carrier's truck in Sacramento, California. One of the residences on his route was that of Mrs. Margaret Coupe, and an envelope containing her bank statement and cancelled checks, mailed to her a day or two before, was never received by her. She did, however, receive a telephone call from a man who, by subterfuge, obtained her maiden name and place of birth, and shortly thereafter a woman, using this information, obtained counter checks from Mrs. Coupe's bank. The next day $2000 in travelers checks was purchased with a check drawn on Mrs. Coupe's account but, needless to say, without her knowledge or consent.

We set forth some of the evidence so that the claims of error that are made can be viewed in a more complete framework. There was evidence before the jury that appellant's fingerprints and palm prints were found on stolen mail that was recovered after the theft. Physical evidence connected to stolen mail was found in the apartment shared by him and a friend. A neighbor of Mrs. Coupe testified that he was alarmed and became suspicious when he saw a man, very closely resembling the appellant, in a brown Mercury Cougar, driving very slowly past Mrs. Coupe's home and pointing to it. The man he described was accompanied by a woman who, in many respects, met the description of the woman who visited the bank and obtained the checks that were used for the fraud. When appellant was arrested he was in a brown Mercury Cougar.

Appellant claimed that he was in Los Angeles on the day of the Sacramento theft, that he had foresworn the criminal life for a career in music and, in addition, certain aspects of the Sacramento theft were performed in a haphazard way and were not up to his professional, cautious standards. These of course were fact issues for the jury to resolve and the jury chose not to believe the appellant.

Understandably, appellant does not claim insufficient evidence. He does claim that there was error in the admission, over his objection, of testimony of a postal inspector relating to admissions made by appellant twenty months earlier, in November 1971; when he was arrested in the Los Angeles area for theft from a mail truck. (He pleaded guilty in February 1972 and was thereafter incarcerated for six months.) It was brought out that after his arrest in 1971, and after being fully informed of his constitutional rights, appellant voluntarily confessed. Exhibiting good sportsmanship, appellant said "If you play, you have to pay" and then went on to tell the postal inspectors that he had stolen from mail trucks on an average of once a week—or about 52 times—during the year ending November 1971. The postal inspector testified that appellant described his modus operandi in some detail. It included entry of unlocked mail trucks, or forced entry into locked ones, and the theft of mail which appellant would then use to conduct fraudulent banking transactions on the addressees' bank accounts.

At his trial in 1973, appellant made no objection to this testimony on constitutional grounds and he made no contention that the postal inspector's testimony was incorrect in any relevant respect. On the contrary, he took the witness stand and corroborated it, elaborating on his unique modus operandi of using the stolen mail for "bank schemes."

■ Appellant's argument that it was error to admit the postal inspector's testimony as to the 1971 confession and admissions is without merit. There was a striking similarity between appellant's modus operandi in 1971 and the crime for which he was being tried, e. g., mail trucks as the target, use of the mail for bank fraud schemes, etc. When evidence of other offenses bears "a common scheme, plan, system or design" it is admissible. *United States v. Webb*, 466 F.2d 1352, 1353 (9th Cir. 1972); *see also Parker v. United States*, 400 F.2d 248 (9th Cir. 1968).

■ Appellant also contends that it was error to admit into evidence the fact that he had been convicted of six other felonies (forgery and burglary) in 1964 and 1965. There is authority in this court that such evidence is automatically admissible to impeach a defendant who has testified in his own behalf, and there is other authority that admissibility is in the discretion of the trial court, depending on the facts of the individual case. *See United States v. Walling*, 486 F.2d 229, 237 (9th Cir. 1973). But we need not set about to resolve any conflict, as in this case there was no objection by the appellant to the introduction of the evidence of his prior convictions and, on a review of the entire record, we are convinced that brief reference to these convictions could not possibly have had a substantial influence on the verdict or have resulted in an unfair trial. *Cf. United States v. Sidman*, 470 F.2d 1158, 1163 (9th Cir. 1972).

■ Another claim of error in the admission of evidence centers about cross-examination of the appellant on the subject of his income. On direct examination appellant testified that when arrested in August 1973 he was making approximately $750 "a week" as a musician. This testimony was apparently offered to show that there could be no monetary motive for the crime. Clearly the government was entitled to attempt to impeach appellant on the question of motivation (*United States v. Webb, supra*)

and the prosecutor proceeded, in a rather vigorous examination, to do just that. Under cross-examination, appellant stated that he was making $750 during "the week" in which he was arrested; he admitted that his earnings in the preceding weeks were somewhat lower. The subject was pressed and appellant claimed that he was offered the musician job in Oakland by a friend who had recently acquired a cafe there. But he was unable to state how that friend might be located, he was unable to remember the name of the cafe, he was unable to state its location except that it was somewhere in the Oakland hills, he was unable to describe it except that it had double doors and was impressively decorated, and he said it had no liquor license by which it might be identified. (Appellant contended that the cafe, even without the liquor license, could afford to pay him $750 per week because there was a $2 admission fee and cokes sold for $1 each.)

In the context of this inquiry into appellant's professed economic and artistic success the prosecutor also asked him whether he had filed an income tax return in 1973. The court overruled an objection of irrelevancy and when appellant's counsel suggested that appellant might incriminate himself the court suggested that he confer with his client about the matter. There was a conference and appellant then responded to the question by stating that he had not filed a return that year. When asked why, he stated that he had been paid in cash. The prosecutor's pursuit of this line of questioning, in light of the defenses and alibis offered by appellant, was probably within his prerogative, but he comes quite close to the line. We offer our view that he had no need to try so hard; it was perhaps a case of overkill. But this is not to say that there was reversible error.

The other claims of error in the admission of evidence of appellant's "bad behavior," and the argument of government counsel, taken individually or in toto, are without merit.

Appellant also argues that the district judge erred in instructing on the liability of an aider or abettor. No attack is made on the wording of the instruction. The sole argument is that it should not have been given on the facts of this case, as there was no proof of the existence of any principal (other than appellant). But appellant himself put before the jury the theory that his roommate and another friend were the real culprits, that they had committed the theft without his knowledge, and had brought the stolen mail back to his apartment and sought his advice on how to use it to best advantage. He testified that prior to that time he had had conversations with the roommate on the subject of mail theft and that he had told him of his unique and effective use of the stolen mail in the "bank schemes." But he testified further that on the night in question, presumably as a result of his rehabilitation and conversion to a life of music, he was incensed when the mail was brought back to the apartment and indignantly ordered it removed at once. This, however, was not until after he had handled some of it, thus explaining the presence of his fingerprints and palmprints on mail that the postal officials recovered. (His roommate's fingerprints were also found.)

Appellant himself thus raised the possibility of a multi-party operation and the jury was entitled on the evidence to determine if he was or was not a participant. The fact of the commission of the crime was clearly proved in this case and there is no need to identify the principal in order to give the instruction on aiding and abetting. *Feldstein v. United States*, 429 F.2d 1092 (9th Cir. 1970). There was sufficient evidence to permit the jury to find that appellant aided and abetted the others and, in so doing, was guilty as a principal under 18 U.S.C. § 2.

The conviction is affirmed.