Michael W. EVANS, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

The STATE of Wyoming, Appellant
(Plaintiff),

v.

Michael W. EVANS, Appellee
(Defendant).

Nos. 5730, 5736.

Supreme Court of Wyoming.

Dec. 13, 1982.

Leonard D. Munker, State Public Defender, Cheyenne, for appellant in Case No. 5730 and for appellee in Case No. 5736.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Senior Asst. Atty. Gen. (argued), Cheyenne, for appellee in Case No. 5730 and for appellant in Case No. 5736.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

In case No. 5730 a district court jury found appellant guilty of sexual assault in the first degree and determined that he was an habitual criminal. The trial court imposed a single sentence of life imprisonment. Appellant appeals from this judgment and sentence. In case No. 5736 the State filed a bill of exceptions saying that the trial judge should have imposed a separate sentence for each, the sexual assault conviction and the determination that appellant was an habitual criminal. The two cases were consolidated on appeal.

The issues in case No. 5730 are:

1. Was there sufficient evidence to sustain the jury's finding of guilt.

2. Did the trial court err in refusing appellant's requested Instruction "A."

3. Did the trial court properly admit testimony concerning a prior sexual assault committed by the appellant.

4. Do the Wyoming habitual criminal statutes create an irrebuttable presumption which violates constitutional principles of due process and the requirement that the state must prove every element of the crime beyond a reasonable doubt.

5. Do the Wyoming habitual criminal statutes constitute a legislative usurpation of judicial prerogative and discretion.

In case No. 5736 the issue is whether the imposition of a single sentence by the trial judge was proper.

We will affirm.

In the information, Count I, appellant was charged with sexual assault in violation of § 6–4–302(a)(i), W.S.1977.[1] Count II charged appellant with being an habitual criminal as defined in § 6–1–110, W.S. 1977.[2]

## I

The victim testified that she knew appellant and that he came to her mobile home and forcibly raped her. Appellant admitted having sexual relations with the victim, but testified that it was with consent and that there was no force or intimidation. At the conclusion of the State's case in chief, appellant moved for a judgment of acquittal.

---

1. Section 6–4–302(a)(i), W.S.1977:

   "(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

   "(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement; * * * "

2. Section 6–1–110, W.S.1977:

   "Every person convicted in this state of a felony, who shall previously have been three (3) times convicted of a felony upon charges separately brought and tried, which have arisen out of separate occurrences either in this state or elsewhere, shall be punished by imprisonment in the state penitentiary for the term of his or her natural life * * *."

The same motion was renewed at the close of appellant's case. He asserts that insufficient evidence was presented to allow the jury to find beyond a reasonable doubt that physical force or forcible confinement was applied. He also asserts that the evidence was insufficient to prove that the woman did not consent. He contends that it was error not to grant a judgment of acquittal.

The standard of review for the denial of a motion for judgment of acquittal is set out in *Aragon v. State,* Wyo., 627 P.2d 599, 602 (1981):

"Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. [Citation.] The question raised is the sufficiency of the evidence to sustain the charge, which is a matter to be determined within the sound discretion of the trial court. [Citations.] In making that determination the district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. * * * It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. * * *"

Employing the elementary appellate rule set out above, the evidence we will consider is: Appellant forced his way into the victim's home. The victim believed appellant had a gun; he, in fact, was carrying a walking cane. The victim expressed her fear by screaming and begging not to be killed. Appellant forced the victim into a bedroom, pushed her into a bed, would not stop despite her pleas, grabbed her forcibly by the arms, told her to "shut up," told her that if she said anything to anyone about the incident he would kill her, and had sexual intercourse with her without consent. The victim expressed fear for her life during the assault.

▮▮ Acquiescence or submission is not consent. *Brown v. State,* Wyo., 581 P.2d 189 (1978). A victim need not do more than her age, strength, surrounding facts, and all attending circumstances make it reasonable for her to do to manifest opposition. *Tryon v. State,* Wyo., 567 P.2d 290 (1977).

▮▮ The evidence here of nonconsent is overwhelming. Appellant has failed to point out any deficiencies in the State's proofs, cite cases, or make argument in support of this assignment of error. If appellant has not brought deficiencies in proof to our attention, we will not make a detailed examination of the record to find them, nor will we search for error if it is not pointed out. *Shaffer v. State,* Wyo., 640 P.2d 88, 107 (1982).

## II

Appellant's proposed Instruction A was refused by the court:

"In a case in which first degree sexual assault is alleged to have occurred, acquiescence in the alleged act or acts may be deemed to be non-consent, if such acquiescence is induced by fear. To be sufficient for this purpose, however, the fear must be based upon something of substance, and furthermore the fear must be of death or severe bodily harm. A woman cannot simply say, 'I was scared,' and thus transform an apparent consent into a legal non-consent which makes the man's act an offense punishable by imprisonment in the state penitentiary. She must have a reasonable apprehension of something real; her fear must be not fanciful but substantial."

Appellant cites no authority for his proposed Instruction A, nor does he make any cogent argument in support of giving such instruction. Before instructing the jury, the trial court said to counsel for appellant, "I think you should state why you offered it, why you feel it was error for the court not to give it." Counsel then read proposed Instruction A in its entirety and cited *Gonzales v. State,* Wyo., 516 P.2d 592 (1973). Counsel did not explain to the court how the cited case applied to the proposed instruction.

Rule 31, Wyoming Rules of Criminal Procedure, provides:

"Instructions to the jury shall be given and objections thereto made at the time and in the manner provided for the giving of instructions and the making of objections thereto in the Wyoming Rules of Civil Procedure. Opportunity shall be given to make objections out of the hearing and presence of the jury. * * * "

Rule 51, Wyoming Rules of Civil Procedure, is applicable to criminal proceedings. *Bentley v. State,* Wyo., 502 P.2d 203 (1972). Rule 51 provides in part:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

■ The reason for the rule requiring distinct objections to instructions is to give the court a timely opportunity to correct instructional errors before it is too late. *Downs v. State,* Wyo., 581 P.2d 610 (1978); and *Leitel v. State,* Wyo., 579 P.2d 421 (1978). When an assignment of error is premised upon refusal to give an instruction, the record must contain a clear statement, explaining the grounds for the exception, sufficient to inform the trial court of possible errors in its failure to give the instruction so that it may have an opportunity to correct instructional errors. *Haley v. Dreesen,* Wyo., 532 P.2d 399 (1975). Here appellant failed to comply with Rule 31, W.R.Cr.P., and Rule 51, W.R.C.P.

■ Furthermore, proposed Instruction A is improper in that it refers to "an offense punishable by imprisonment in the state penitentiary." If part of an instruction is erroneous, a trial court may properly reject the entire instruction. It has no duty to excise objectionable portions of an instruction and rephrase it to properly state the law of the case. The duty of the trial court is discharged in criminal cases if it adequately instructs the jury on the general principles applicable in the case. Particular instructions must generally be requested, and unless such requested instructions are correct it is proper for the court to refuse to give them. *State v. Catellier,* 63 Wyo. 123, 179 P.2d 203, 222 (1947).

■ The proposed instruction is also argumentative, and a court may properly refuse instructions which are argumentative or which unduly emphasize one aspect of a case. *People v. McKenna,* 196 Colo. 396, 585 P.2d 275, 281, 1 A.L.R. 4th 273 (1978).

### III

The State called "D.J." as a witness in its case in chief. She testified that she had been raped by appellant about a year before the sexual assault charged in this case.[3] The two sexual assault incidents have certain similarities: (1) Appellant knew both victims; (2) both assaults took place in a private home when other people were in the house; (3) both assaults were in the same town; and (4) both victims were threatened with death.

Before trial appellant made a motion in limine. At the hearing on this motion, appellant's objection to "D.J.'s" testimony is not clear. Appellant explained generally to the court his understanding of the limitation of testimony under Rule 404, Wyoming Rules of Evidence.

At trial, before "D.J." testified, appellant was more specific. He said, "I would renew my objection. * * * At this point, Your Honor, his character (appellant) is not in issue. Under 4(a) [sic] there's got to be some showing that her testimony will be connected to this particular event." The State countered, explaining that "D.J.'s" testimony was offered to show similar conduct, motive and intent, and a course of conduct, or any similar act. Appellant did not object at trial to the testimony for the purposes indicated by the State. In his brief and oral argument, however, he addressed the testimony as not being admissible to show intent.

■ In *Elliott v. State, supra,* at 1047, we said:

---

**3.** In *Elliott v. State,* Wyo., 600 P.2d 1044, 1048 (1979), we said instances of sexual assault not more than three years prior to the sexual as-

sault charged would not be precluded because of remoteness.

"Our analysis of cases from other jurisdictions leads to the conclusion that in recent years a preponderance of the courts have sustained the admissibility of the testimony of third persons as to prior or subsequent similar crimes, wrongs or acts in cases involving sexual offenses. Among the grounds relied upon for the admissibility of such evidence is that it is admissible to show motive or to show plan, with various phrases being used by the courts to describe those concepts. * * * "

Rule 404(b), W.R.E., provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." [4]

Another court stated:

" * * * There was a striking similarity between Appellant's modus operandi in 1971 and the crime for which he was being tried * * *. When evidence of other offenses bears 'a common scheme, plan, system or design,' it is admissible. [Citations.]" *United States v. Oliphant,* 525 F.2d 505, 507 (9th Cir.1975), cert. denied 424 U.S. 972, 96 S.Ct. 1473, 47 L.Ed.2d 740 (1976).

There is a striking similarity in the assault on "D.J." and the assault on the victim here. We hold that testimony of the prior crime was "sufficiently similar to pass the test of relevancy under Rule 404(b), W.R.E., and was admissible for the purpose of proving the motive of the appellant." *Elliott v. State,* supra, at 1048.

Appellant also contends that "since intent as an element of the crime does not require proof, the introduction of 'D.J.'s' testimony had no probative value * * * and was therefore prejudicial." He refers to *Rhodes v. State,* Wyo., 462 P.2d 722 (1969), in support of this contention. We need not rule on this portion of appellant's assignment of error because we have ruled that evidence of a prior sexual assault was admissible for purposes other than to show intent.

Rule 403, W.R.E., provides that even though evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of prejudice.[5] As we said in *Elliott v. State,* supra, at 1049:

"The determination of admissibility of the testimony * * * [of the prior assault] under Rule 404(b), W.R.E., is only the first step in connection with the ultimate ruling admitting the evidence. Under Rule 403, W.R.E., in each such instance the trial court is called upon to weigh the probative value against the danger of unfair prejudice, confusion of the issues

---

**4.** The purposes for admitting evidence of other crimes or wrongs set out in Rule 404(b), W.R.E., are not exhaustive nor conclusive. 2 Weinstein's Evidence, 404[08], pp. 404–47, 404–48 (1981).

**5.** One commentator writes:

"Rule 404(b) does not authorize automatic admission. The rule lists some of the instances in which other crimes evidence may be admissible, but these categories are neither exhausive nor conclusive. The terminology 'crimes, wrongs, or acts' indicates that conduct that is neither criminal nor unlawful is included if it sheds light on the defendant's character and is relevant to something other than propensity. The proffered item may tend directly to prove or disprove a consequential fact, such as intent or knowledge, or it may tend to establish a proposition, such as motive, which through a series of inferences may tend to establish the probability of a consequential fact such as intent.

"Rule 404(b) is a specialized rule of relevancy. Accordingly, as with any determination pursuant to Rule 401, counsel must be prepared to 1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed * * *, 2) prove the other crimes, wrongs or acts * * *, and 3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence * * *. Evidence which passes muster up to this point must, in addition, satisfy the balancing test imposed by Rule 403 which requires the probative value of the other crimes evidence to outweigh the harmful consequences that might flow from its admission. * * *" 2 Weinstein's Evidence, 404[08], pp. 404–47 through 404–49 (1981).

or misleading the jury, among other factors. * * *

"The function of performing the comparisons required by Rule 403, W.R.E., generally is held to be discretionary with the trial court. The fact that the evidence is detrimental to the defendant is neutral. For the prejudice factor to come into play the court must conclude that it is unfair. *United States v. Dolliole,* 597 F.2d 102 (7th Cir.1979). * * * "

Evaluating the evidence here in light of cases and authorities we have referred to, we hold that the trial court balanced Rules 404(b) and 403, W.R.E., and properly admitted the testimony of the prior assault victim.

Appellant did not ask the court for an instruction limiting the testimony of the former assault victim either at the time the prior assault victim testified nor when the jury was finally instructed.[6] Rule 105, W.R.E., provides in part:

"When evidence which is admissible * * * for one (1) purpose but not admissible * * * for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

## IV

The two issues we will address in this and the following section of the opinion are stated differently in appellant's docketing statement, his designation of the issues at the beginning of his brief, and his discussion of such issues in the body of his brief. We distill from appellant's three different statements of the issues that he is asking us to answer two questions:

Do the Wyoming habitual criminal statutes create an irrebuttable presumption which violates constitutional principles of due process and the requirement that the state must prove every element of the crime beyond a reasonable doubt?

Do the Wyoming habitual criminal statutes constitute a legislative usurpation of judicial prerogative and discretion?

We will discuss the first question in this section of our opinion, and the second question in Section V.

Appellant attacks the validity of the habitual criminal statutes on a philosophical basis and generally cites authorities that address broad constitutional principles. He cites very little authority that addresses the precise issues raised here.

Habitual criminal, recidivist and subsequent offender statutes have been constitutionally attacked on numerous theories. Generally, these statutes have been upheld by the courts.

"* * * [A] state may authorize the imposition of heavier punishment on recidivists than on first offenders. Habitual criminal statutes, which have been declared to be sound in principle and sustained by reason, are based on the concept that the legislature may require the courts to take into consideration the persistence of the accused in a criminal course. However, the enhanced punishment authorized under statutes of this kind is an incident of the subsequent offense, that is, the offense for which the accused is being tried, and, on conviction, the defendant is subject to more severe punishment as a result of the incorrigible nature of his conduct demonstrated by the previous criminal record. Accordingly, a statute authorizing the imposition of enhanced punishment on recidivists does not create a separate offense, and one who is indicted as a second or a subsequent offender is not accused of any crime other than the one principally charged. A habitual criminal statute does not punish a defendant for his previ-

---

**6.** WPJIC § 2.103 (1978) is a form of a limiting instruction:

"Certain evidence was admitted for a limited purpose.

"At the time this evidence was admitted you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was admitted.

"You are again instructed that you must not consider such evidence for any purpose except the limited purpose for which it was admitted."

ous offenses but for his persistence in crime, and it has been said that to be a habitual criminal involves a status rather than the commission of a separate offense." 39 Am.Jur.2d, Habitual Criminals and Subsequent Offenders, § 2, pp. 308–310 (1968).

Section 6–1–111(c), W.S.1977, provides: "In any trial under the provisions of this act [§§ 6–1–109 to 6–1–111], a duly authenticated copy of the record of former convictions and judgments of any court of record for any of the offenses charged against the defendant indicted or informed against by the state shall be prima facie evidence of such convictions and may be used in evidence against the defendant."

Appellant's trial was bifurcated. After the jury found him guilty of first-degree sexual assault, it then considered whether appellant was an habitual criminal under § 6–1–110, supra. At the second half of the bifurcated trial, the State introduced into evidence authenticated copies of three former felony convictions and evidence that appellant was the same person who had been convicted of the felonies charged in the information. Appellant does not raise any issue regarding proof of the three prior felony convictions or his identity; in fact, he admits his convictions of three prior felonies.

Appellant offered, and the court refused, Instruction B.

"You are instructed that the introduction of three previous convictions constitute prima facie evidence that the conduct of the defendant and his acts may be construed as habitual criminal behavior. This form of evidence may be all that is necessary for a conviction under the habitual criminal act. However this evidence is rebutable [sic] or may be rejected if you find otherwise. Your judgment in this regard must be beyond a reasonable doubt."

Appellant did not object to the court's instructions, and so far as instructions are concerned, his only objection in the trial court and on appeal is the trial court's re-

fusal to give his proposed Instruction B. Appellant's apparent objection to the refusal to give this instruction and to § 6–1–111(c) is that there is "no avenue for rebuttal to establish non-habitual criminal conduct."

Authenticated copies of record of convictions being "prima facie evidence of convictions" is far different than an "irrebuttable presumption" of conviction.

" * * * We have defined prima facie evidence as evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence. * * *" *State v. Haremza*, 213 Kan. 201, 515 P.2d 1217, 1222 (1973).

" * * * [A]n * * * 'irrebuttable' presumption, is a rule of law determining the quantity of evidence requisite for the support of a particular averment *which is not permitted to be overcome by any proof that the fact is otherwise. * * *"* *Paul v. Los Angeles County Flood Control District,* 37 Cal.App.3d 265, 112 Cal. Rptr. 274 (1974).

A person charged under § 6–1–110, W.S. 1977, would not be precluded from producing evidence that the prior offenses charged had not been committed, that they were not felonies, and that there were irregularities in the records of conviction or numerous deficiencies in foundation. Furthermore, a person charged could properly produce evidence to show that he was not the person convicted of other felonies charged. We will not speculate as to what other defenses may be available of this general nature.

" 'The enactment of an habitual criminal statute does not change the rules of evidence, or increase the malignity of the crime, or take the presumption of innocence away from an accused * * *.' " *Harms v. State,* 36 Wis.2d 282, 153 N.W.2d 78, 80 (1967).

" * * * This section of the act, which has not been changed since the Habitual Criminal Act of 1883, provides as follows: 'On any trial for any of said offenses, a duly authenticated copy of the record of a

former conviction and judgment of any court of record, for either of said crimes against the party indicted, shall be prima facie evidence of such former conviction, and may be used in evidence against such party.' [Citation.] By this section the legislature has merely established a rule of evidence, which may be invoked at the trial of one charged with being an habitual criminal. * * * " *People v. Yarsitis,* 406 Ill. 99, 92 N.E.2d 161, 162 (1950). "The enactment of the habitual criminal statute did not change the rules of evidence, nor increase the malignity of the crime, nor take the presumption of innocence away from a defendant. [Citations.] Nor did it affect the rule as to the credibility of a defendant. * * * " *Smith v. State,* 227 Ind. 672, 87 N.E.2d 881, 883 (1949).

" ' * * * [N]o matter how strong the proof may be of an affirmative fact presented by the state, and notwithstanding there may be no contradiction thereof, still it is for the jury to say whether or not the fact is established.' [Citation.] This rule applies to proof of the prior conviction as well as to other essential elements of the offense. * * * " *State v. Kimbrough,* 350 Mo. 609, 166 S.W.2d 1077, 1081 (1942).

▆▆▆ Appellant brings to our attention *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). That case has no application here as it speaks of statutes creating permanent irrebuttable presumptions. Wyoming habitual criminal statutes do not contemplate "irrebuttable presumptions." *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), cited by appellant, dealt with an instruction that might have been interpreted by the jury as containing a "conclusive presumption." That case likewise has no application here, as we are not dealing with conclusive or irrebuttable presumptions. Appellant

refers to *Peterson v. State,* Wyo., 586 P.2d 144 (1978), by saying, "The court had before it *Peterson v. State.*" In Peterson the sentence was not life imprisonment, nor was a mandatory life sentence statute involved. We do not know why appellant thinks Peterson is applicable here.

▆▆▆ Appellant does not contend that he was precluded from presenting evidence in connection with prior convictions or identity. He seems to attack the habitual criminal statutes because there is no authority in the statutes to present "mitigating evidence," "nonhabitual conduct," or "good character." [7] Literature on habitual criminal statutes speaks of defendant's burden to show certain affirmative defenses, such as conviction reversed, annulled, not final, set aside, or that defendant was pardoned or that there were infirmities in the prior convictions open to collateral attack. The defenses suggested by appellant of mitigating evidence, good character and nonhabitual conduct, are matters not ordinarily relevant in the factual determination of a criminal case.

Further, appellant cites no authority in support of his contention that matters in mitigation, good character or nonhabitual conduct can properly be submitted to a jury in that part of the proceedings where the issues are conviction of three prior felonies and identity. [8] In our independent research we have found no authority to allow such evidence. "Where an appellant asserts errors, but cites no authority and makes only a perfunctory argument in support of the contention, this court will not consider the contention." *Elder v. Jones,* Wyo., 608 P.2d 654 (1980); and *Scherling v. Kilgore,* Wyo., 599 P.2d 1352 (1979).

## V

▆▆▆ The appellant's second argument concerning the habitual criminal statutes seems to be a contention that they

---

7. In a criminal prosecution the defendant cannot introduce evidence as to a good reputation acquired by him while in jail awaiting trial. *Hill v. State,* 37 Tex.Cr. 415, 35 S.W. 660 (1896).

8. Appellant made no offer of proof; however, the court had previously indicated that evidence in mitigation, good moral character and nonhabitual conduct was not proper to present to the jury.

violate the separation of powers doctrine. The power to prescribe punishment for acts prohibited belongs to the legislative branch of the government. *Chavez v. State,* Wyo., 604 P.2d 1341 (1979), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980); and *Sorenson v. State,* Wyo., 604 P.2d 1031 (1979). Under this universally recognized power, the legislature enacted §§ 6–1–109 —6–1–111, W.S.1977, providing for increased punishment for those in the designated status of habitual criminal. The habitual criminal statutes are not an unlawful delegation of legislative authority. *State v. Brezillac,* 19 Wash.App. 11, 573 P.2d 1343 (1978).

> " * * * [The statute] is not a delegation of the legislature's power to determine appropriate punishment for criminal violations. The statute merely vests the prosecution with the power to charge a person with the status of a habitual criminal. The prosecution must prove its allegations beyond a reasonable doubt. Implicit within the statute is a reasonable standard to govern the prosecuting attorney's exercise of discretion to initiate these proceedings. The decision to prosecute must be based on the prosecutor's ability to meet the proof required by the statute. [Citations.] We consider the statute a proper legislative investiture of authority to the executive branch. [Citation.]" *State v. Lee,* 87 Wash.App. 932, 558 P.2d 236, 237–238 (1976).

In *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the defendant, who had twice been imprisoned following felony convictions in Texas state courts, was subsequently charged with a third felony. The prosecution chose to proceed against the defendant under the Texas recidivist statute, mandating life imprisonment for anyone upon a third conviction of a felony. Following defendant's conviction for the third felony, the Texas trial court imposed a life sentence under the recidivist statute.[9] The *Rummel* case came before the United States Supreme Court in a circuitous manner. The Court noted in its opinion that it had previously held that the Texas recidivist statute did not violate the constitution. *Spencer v. State of Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), reh. denied 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967).

In *Spencer* the Court said that similar statutes had been sustained against contentions that they violated "constitutional strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities." *Spencer v. State of Texas,* supra, 385 U.S. at 560, 87 S.Ct. at 648, 17 L.Ed.2d at 606.

> The Supreme Court in *Rummel* said:
> " * * * [O]ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative. * * *
>
> " * * * [R]eluctance to review legislatively mandated terms of imprisonment is implicit in our more recent decisions * * *." 445 U.S. at 274, 100 S.Ct. at 1139, 63 L.Ed.2d at 391.

Section 7–13–301, W.S.1977, provides in part:

> "After conviction or plea of guilty for any offense, except crimes punishable by death or life imprisonment, the court may suspend the imposition of sentence, or may suspend the execution of all or a part of a sentence * * *."

The New Mexico Supreme Court in *State v. Mabry,* 96 N.M. 317, 630 P.2d 269 (1981), addressed a problem similar to appellant's contention here. Section 31–18–3A, N.M.S. A.1978, mandated that the court sentence

---

**9.** West Virginia and Washington impose mandatory life sentences upon the commission of a third felony. See Wash.Rev.Code § 9.92.090 (1976); and W.Va.Code § 61–11–18 (1977). In addition to Wyoming, other states impose a mandatory life sentence upon conviction of four felonies. See, e.g., Colo.Rev.Stat. § 16–13–101 (1973 and Supp.1976); Nev.Rev.Stat. § 207.010 (1977); S.D.Comp.Laws Ann. §§ 22–6–1, 22–7–8 (Supp.1978).

such person to the term of life imprisonment in the penitentiary. Another statute, § 31–20–3, N.M.S.A.1978, allowed the trial court to defer or suspend a sentence prescribed by law for "any crime not constituting a capital or first degree felony." The defendant in *Mabry* contended:

" * * * (1) that the judiciary possessed, at common law, the inherent power to suspend sentence; (2) that this inherent power is an integral part of the judicial department and cannot, therefore, be abrogated by the Legislature consistent with the constitutional mandate of separation of powers contained in N.M. Const. Art. III, Section 1." *State v. Mabry,* supra, 630 P.2d at 272.

In rejecting defendant's contentions the New Mexico Supreme Court said:

" * * * The vast majority of jurisdictions which have considered the question whether the courts have the inherent power to suspend sentences have answered in the negative. * * * A leading case is *Ex Parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916), in which the Supreme Court held that federal courts do not have the power, absent authorization by Congress, to indefinitely suspend a sentence on good behavior. The Court examined common law authorities and found no support for the proposition that courts at common law had the inherent authority to suspend sentences indefinitely.

\*     \*     \*     \*     \*     \*

"The only New Mexico case which has considered this question, *In re Juan Lujan,* 18 N.M. 310, 137 P. 587 (1913), concluded without reviewing the common law history that the court was without power to suspend a sentence absent statutory authorization.

"We need not enter the historical debate over the ability of common law courts to suspend sentences. Even assuming, arguendo, that our courts would have possessed such a power at common law, that power has long been defined and delimited by statute in New Mexico. See, e.g., 1909 N.M.Laws, ch. 32, § 1. The disposi-

tive question here is whether a legislative act making a sentence mandatory, and thus denying any right of the courts to suspend sentences, violates the doctrine of separation of powers. We hold that it does not." *State v. Mabry,* supra, 630 P.2d at 272.

See also *Hill v. State,* 276 Ark. 300, 634 S.W.2d 120 (1982).

▮▮▮▮▮ We hold that § 6–1–110, W.S. 1977, mandating a sentence of life imprisonment for a person determined to have been an habitual criminal, is not an impermissible legislative usurpation of the court's prerogatives, is not an unconstitutional encroachment on the power of the judiciary, and does not violate the separation of powers clause of the constitution. *State v. Dickenson,* 229 Kan. 152, 621 P.2d 1002 (1981); *City of Junction City v. Griffin,* 227 Kan. 332, 607 P.2d 459 (1980); *People v. Hall,* 396 Mich. 650, 242 N.W.2d 377 (1976); *Lavon v. State,* Tenn., 586 S.W.2d 112 (1979). We further hold that § 7–13–301, W.S.1977, is a proper exercise of an inherent legislative power to prohibit suspension of sentence in a given case. *Murray v. State,* Okl.Cr., 556 P.2d 635 (1976).

▮▮▮▮ The legislature is free to retain or delegate sentencing discretion when defining and setting punishment. It may properly delegate sentencing discretion in part and retain sentencing discretion in part. *People v. Hall,* supra.

## VI

### Bill of Exceptions

▮▮▮▮ At the sentencing hearing the State urged that the court first sentence the defendant on his conviction for sexual assault in violation of § 6–4–302(a)(i), W.S. 1977, and then proceed to sentence him to life imprisonment for having been determined to be an habitual criminal under § 6–1–110, W.S.1977. The State emphasizes on appeal that if two separate sentences were imposed, there would be a "merger of offenses and/or sentences, and that the lesser sentence merges with the greater and only the greater is to be

served." The State further points out that this procedure would be in the interest of judicial economy; and concludes that if both sentences are not imposed, a resentencing will be necessary when error occurs in the habitual criminal sentencing process. We do not agree that two separate sentences should have been imposed.

■ The habitual criminal statute does not create a new or separate crime and does not authorize or contemplate the conviction of the charge of being an habitual criminal. The distinct crime of being an habitual criminal is unknown. The habitual criminal act only prescribes a punishment and provides that in cases of a fourth felony conviction the penalty shall be enhanced. The repetition of criminal conduct aggravates the offense and provides greater penalties. The punishment is for the fourth felony, but it is enhanced because the defendant is an habitual criminal. The prior felony convictions are not integral parts of the principal offense charged in the information, but are instead matters of aggravation concerning the punishment to be imposed. Habitual criminality is a status, not an offense, and its finding calls for an enhancement of the punishment for the crime charged.

" * * * Since habitual criminality is a status, not a crime, * * * a judgment of conviction of an accused as an 'habitual criminal' is considered null and void, there being no such offense, and on conviction under an indictment alleging prior convictions there can be but one judgment or sentence imposed." 24B C.J.S. Sentence of Judgment § 1971, p. 521 (1962).

" * * * Habitual criminality is a status rather than an offense, and allegations of previous convictions made in indictments or informations brought under an habitual criminal statute do not constitute a distinct charge of crime, but go only to the punishment of the criminal. * * * "

42 C.J.S. Indictments and Informations § 145, p. 1065 (1944), quoted with approval in *Waxler v. State,* 67 Wyo. 396, 224 P.2d 514, 519 (1950).

■ The effect of two sentences would be tantamount to sentencing a defendant for being an ex-convict. Separate sentences would violate the double jeopardy prohibition. *People v. Atkinson,* 376 Ill. 623, 35 N.E.2d 58 (1941); *State v. Collins,* 266 Mo. 93, 180 S.W. 866 (1915); *Von Bokelman v. Sigler,* 175 Neb. 305, 121 N.W.2d 572 (1963); *Jones v. State,* 147 Neb. 219, 22 N.W.2d 710 (1946); *Ex Parte Kuwitzky,* 135 Neb. 466, 282 N.W. 396 (1938); *Meade v. State,* Tenn.Cr.App., 484 S.W.2d 366 (1972); *State v. Boles,* 151 W.Va. 194, 151 S.E.2d 115 (1966).

In *State v. Boles,* 149 W.Va. 365, 141 S.E.2d 59 (1965), the defendant had been convicted of breaking and entering in 1958. After conviction and before sentencing, a second information was filed against defendant setting forth two previous convictions of felonies in the years 1944 and 1953.[10] Defendant was sentenced to life imprisonment under West Virginia's recidivist statute. Defendant contended that the life sentence was void and his sentence should have been one to ten years for breaking and entering, plus an additional five years for a previous conviction. The court held:

" * * * However our recidivist statute does permit an increased sentence for a convicted felon who has theretofore been convicted of one or more felonies and such fact is brought to the attention of the court prior to sentencing by means of an information. That is exactly what occurred in this case and the information was filed subsequent to conviction and prior to sentencing. It is the view of this Court that under those circumstances the trial court had no authority to impose a one to ten year sentence upon the prison-

10. In some states the procedure for implementing the recidivist statute is different than in Wyoming. In these states, after conviction but before sentencing on the principal charge, a separate information is filed setting out prior felonies. After trial on the second information (setting out prior felonies), a defendant is sentenced on the principal charge set out in the first information and the sentence is enhanced if the defendant is an habitual criminal.

er, that being the statutory penalty for the principal crime of which he had been convicted and not yet sentenced, inasmuch as under the provisions of * * * [recidivist statute] it became the mandatory duty of the trial court to impose a life sentence in the penitentiary upon the prisoner. The language of that section is clear and this language will be repeated: ' * * * the person shall be sentenced to be confined in the penitentiary for life.' " *State v. Boles,* supra, 141 S.E.2d at 63.

In a later case, the court said, " * * * A defendant may not be sentenced for the principal offense and then be given an additional separate sentence upon the information. This, in effect, would result in sentencing one for being an ex convict. * * * " *State v. Boles,* 151 W.Va. 194, 151 S.E.2d 115, 119 (1966).

In *Ex Parte Kuwitzky,* supra, 282 N.W. at 399, the Nebraska Supreme Court held: "We are of the opinion that count 2 of the information filed in Otoe county against the appellant in the case at bar did not charge a separate and distinct offense under the laws of Nebraska; that the previous convictions on several felonies alleged therein, would, if proved, show the appellant to be an habitual criminal, and permit his punishment for the act of burglary charged in count 1 to be increased, but that the trial court was without authority to render a distinct, separate judgment and sentence upon count 2 of said information, as was done."

See also: *People v. Fountain,* 407 Mich. 96, 282 N.W.2d 168 (1979); and *Cohen v. State,* Nev., 625 P.2d 1170 (1981).

Here the trial court properly refused to impose separate sentences under the sexual assault statute and under the habitual criminal statute. He imposed one sentence for violation of the sexual assault statute, such sentence being enhanced because the defendant was determined to have been an habitual criminal. While the court's judgment and sentence provided for a single sentence, it did not specifically say that

such sentence is for violation of the sexual assault statute.[11] However, the court's analysis of the sentencing problem at the time of sentencing indicates that the court recognized that the defendant had only been convicted of sexual assault, and that the determination that he was an habitual criminal required an enhanced sentence mandated by the legislature to be life imprisonment.

Affirmed.

---

11. No issue is raised regarding the language in judgment and sentence. If there is any irregu- larity here, it is as to form, not substance, and can be disregarded.