No. 52,202

STATE OF KANSAS, *Appellee,* v. MARK A. DICKENSON, *Appellant.*

(621 P.2d 1002)

Opinion filed January 17, 1981.

*Milo M. Unruh,* of Wichita, argued the cause, and *John C. Nodgaard* and *Milo M. Unruh, Jr.,* also of Wichita, were with him on the brief for the appellant.

*Beverly Dempsey,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Stuart W. Gribble,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Mark A. Dickenson appeals his conviction of aggravated robbery (K.S.A. 21-3427).

On October 31, 1979, the Long John Silver's restaurant on West Pawnee Street in Wichita was robbed at gunpoint by a lone bandit. Defendant was charged with the robbery and was convicted of the crime in a bench trial. The sole witness at the trial was Sam Shiblom, restaurant manager, who positively identified defendant as the robber.

Defendant was sentenced pursuant to K.S.A. 1979 Supp. 21-4618, which requires the mandatory minimum sentence be imposed where a firearm is used in the commission of an Article 34 crime. Defendant contends said statute is constitutionally impermissible in that the legislature has, by its enactment, usurped the powers and prerogatives of the judicial branch of government. This issue was considered by this court in *State v. Freeman,* 223 Kan. 362, Syl. ¶ 6, 574 P.2d 950 (1978), wherein the court held:

"In light of the Kansas sentencing statute, K.S.A. 21-4501(*b*), the provisions of K.S.A. 1977 Supp. 21-4618 and 22-3717 (8) denying probation and parole privileges to a defendant convicted of an Article 34 crime in which the defendant used a firearm in the commission of the crime of murder in the second degree are not such a restriction on the judicial power of the sentencing judge as would constitute an impermissible legislative usurpation of the court's prerogatives."

We adhere to *Freeman.*

The balance of the issues relate to various search and seizure

questions. On December 4, 1979, defendant was stopped by a police officer for defective equipment on the motor vehicle he was operating. While the vehicle was stopped the officer observed what was believed to be contraband in the vehicle. While retrieving the alleged contraband, more alleged contraband was observed. While retrieving the second item, more items were observed, and so it went. Ultimately, suspicious items were removed from the glove compartment under contested circumstances. Defendant was arrested and during a search at the police station a newspaper clipping concerning the restaurant robbery was discovered in defendant's billfold. The police file relative to the robbery was checked and defendant appeared to fit the description of the robber. The restaurant manager then identified defendant. Until the discovery of the newspaper clipping defendant was not a suspect in the robbery. None of the items taken from the vehicle were related to the restaurant robbery, nor were they introduced in the trial. Likewise, the newspaper clipping was not introduced at trial. The State's case against defendant was the eyewitness in-court identification of defendant by the victim.

Defendant contends the various searches and seizures were all unlawful and, individually or collectively, directly led to his in-court identification by the victim. He argues the trial court erred in overruling his motion to suppress his in-court identification by the victim. The various searches and seizures pyramid upon each other. The validity of each is dependent to a considerable extent upon the prior acts.

We do not need to determine the validity of the various searches and seizures. None of the items taken from defendant's vehicle were used as evidence in this case.

Defendant argues the in-court identification should be suppressed as "fruit of the poisonous tree." A similar question was presented in *United States v. Crews,* 445 U.S. 463, 63 L.Ed.2d 537, 100 S.Ct. 1244 (1980). In *Crews,* the defendant was illegally arrested but was identified in court by the victim. The trial court overruled the Crews motion to suppress but was overruled by the District of Columbia Court of Appeals. The United States Supreme Court reversed the Court of Appeals. The rationale of the Supreme Court needs to be recited at length as follows:

"On appeal, the District of Columbia Court of Appeals, sitting en banc,

reversed respondent's conviction and ordered the suppression of the first robbery victim's in-court identification. 389 A.2d 277 (1978). The court viewed its decision to be a wholly conventional application of the familiar 'fruit of the poisonous tree' doctrine. See *Wong Sun v. United States,* 371 U.S. 471 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385 (1920). After upholding the trial court's finding that respondent was detained without probable cause—a determination that is not challenged in this Court—the Court of Appeals turned to consideration of what evidentiary consequences ought to flow from that Fourth Amendment violation. In deciding whether the in-court identification should have been suppressed, the court observed that the analysis must focus on whether the evidence was obtained by official 'exploitation' of the 'primary illegality' within the meaning of *Wong Sun, supra,* and that the principal issue was whether the unlawful police behavior bore a causal relationship to the acquisition of the challenged testimony. The court answered that question in the affirmative, reasoning that but for respondent's unlawful arrest, the police would not have obtained the photograph that led to his subsequent identification by the complaining witnesses and, ultimately, prosecution of the case. Satisfied that the in-court identification was thus at least indirectly the product of official misconduct, the court then considered whether any of three commonly advanced exceptions to the exclusionary rule—the 'independent source,' 'inevitable discovery,' or 'attenuation' doctrines—nonetheless justified its admission. Finding these exceptions inapplicable, the Court of Appeals concluded that the in-court identification testimony should have been excluded as a product of the violation of respondent's Fourth Amendment rights. We granted certiorari. 440 U.S. 907 (1979). We reverse.

## II

"*Wong Sun, supra,* articulated the guiding principle for determining whether evidence derivatively obtained from a violation of the Fourth Amendment is admissible against the accused at trial: 'The exclusionary prohibition extends as well to the indirect as the direct products of such invasions.' 371 U.S., at 484. See *Silverthorne Lumber Co. v. United States, supra; Weeks v. United States,* 232 U.S. 383 (1914). As subsequent cases have confirmed, the exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention.

"In the typical 'fruit of the poisonous tree' case, however, the challenged evidence was acquired by the police *after* some initial Fourth Amendment violation, and the question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality. Thus most cases begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity. It is the Court of Appeals' application of that premise to the facts of this case that we find erroneous.

"A victim's in-court identification of the accused has three distinct elements. First, the victim is present at trial to testify as to what transpired between her and the offender, and to identify the defendant as the culprit. Second, the victim possesses knowledge of and the ability to reconstruct the prior criminal occur-

rence and to identify the defendant from her observations of him at the time of the crime. And third, the defendant is also physically present in the courtroom, so that the victim can observe him and compare his appearance to that of the offender. In the present case, it is our conclusion that none of these three elements 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights. *Wong Sun, supra,* at 488.

### A

"In this case, the robbery victim's presence in the courtroom at respondent's trial was surely not the product of any police misconduct. She had notified the authorities immediately after the attack and had given them a full description of her assailant. The very next day, she went to the police station to view photographs of possible suspects, and she voluntarily assisted the police in their investigation at all times. Thus this is not a case in which the witness' identity was discovered or her cooperation secured only as a result of an unlawful search or arrest of the accused. Here the victim's identity was known long before there was any official misconduct, and her presence in court is thus not traceable to any Fourth Amendment violation.

### B

"Nor did the illegal arrest infect the victim's ability to give accurate identification testimony. Based upon her observations at the time of the robbery, the victim constructed a mental image of her assailant. At trial, she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him as the robber. No part of this process was affected by respondent's illegal arrest. In the language of the 'time-worn metaphor' of the poisonous tree, *Harrison v. United States,* 392 U.S. 219, 222 (1968), the toxin in this case was injected only after the evidentiary bud had blossomed; the fruit served at trial was not poisoned.

"This is not to say that the intervening photographic and lineup identifications—both of which are conceded to be suppressible fruits of the Fourth Amendment violation—could not under some circumstances affect the reliability of the in-court identification and render it inadmissible as well. Indeed, given the vagaries of human memory and the inherent suggestibility of many identification procedures, just the opposite may be true. But in the present case the trial court expressly found that the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications, and this determination finds ample support in the record. In short, the victim's capacity to identify her assailant in court neither resulted from nor was biased by the unlawful police conduct committed long after she had developed that capacity.

### C

"Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction. *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975); *Frisbie v. Collins,* 342 U.S. 519 (1952); *Ker v. Illinois,* 119 U.S. 436 (1886). The exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official

lawlessness. Respondent is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." 445 U.S. at 468-74.

In *Crews,* police improperly photographed the defendant as a possible suspect in the crime. A victim identified the defendant from a photograph and then defendant was arrested.

In the case before us a newspaper clipping first linked defendant to the crime. We have not been provided with the details of when and where the victim first identified defendant as the robber. The victim's in-court identification was based wholly on his independent recall of the events at the time of the crime.

Based on the rationale of *Crews* and cases cited therein, we conclude the trial court did not err in refusing to suppress the victim's in-court identification of defendant in that: (1) The victim's identity was known to the police prior to any alleged misconduct and his presence at trial was not the result of misconduct; and (2) the victim's ability to identify defendant was based wholly from the crime itself, untainted by the subsequent alleged police misconduct.

The judgment is affirmed.