(999 P.2d 274)

No. 81,737

STATE OF KANSAS, *Appellee*, v. DENNIS BARTLETT, *Appellant*.

144

Opinion filed March 3, 2000.

*Randy R. McCalla*, of Speer, Holliday & Veatch, of Olathe, for appellant.

*Steven J. Obermeier* and *Christian Webb*, assistant district attorneys, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., PIERRON, J., and WAHL, S.J.

WAHL, J.: Dennis Bartlett appeals the trial court's denial of his motion to suppress evidence and his subsequent conviction for attempted manufacture of methamphetamine in violation of K.S.A. 21-3301, K.S.A. 1996 Supp. 65-4107(d)(3), and K.S.A. 1996 Supp. 65-4159. He was sentenced to 49 months' imprisonment.

On April 9, 1997, Bartlett and his wife, Debra, were working at a residential construction site in Overland Park, Kansas. Bartlett requested Debra to take his car to fill a water container. The car was titled in appellant's name, but Debra had a key and could drive it when appellant did not need it.

Debra left with her 15-year-old son and was pulled over for speeding by Officer Patrick Bouchard of the Olathe Police Department. Officer Bouchard testified that after advising Debra she was speeding, he requested her driver's license and observed her hand "shaking violently" and that her voice was a "little bit nervous." Officer Bouchard requested to see proof of insurance, which she tried to locate in the glove compartment but could not find. Officer Bouchard returned to his patrol car to write citations for speeding and no proof of insurance. He ran a record check on Debra which turned up prior charges for theft and narcotics. As the officer wrote out the citations, he observed Debra lean over several times in the front seat out of his view, which caused him to radio for the assistance of a second police unit.

Officer Bouchard testified that he was suspicious Debra might be trying to conceal some type of contraband, narcotics, or weapon, and that he had seen similar movements "frequently" in the prior narcotics arrests he had made. He returned to the car and asked Debra to step out so that he could explain the citations to her and show her the radar reading. Officer Bouchard acknowledged that he did this to further examine her demeanor. The officer walked

her back to the door of his patrol car, issued the citations, and began to question her based on his suspicions.

Officer Bouchard then asked Debra for consent to pat her down and search the vehicle, which he states was freely given. Debra maintains she never consented to the search of the car. Nothing illegal was discovered in the pat-down search and Officer Bouchard testified that she was free to leave at any time. The officer's search of the vehicle resulted in the discovery of drugs in the pocket of a jacket in the back seat and drug paraphernalia in the glove compartment and front console.

Officer Donald Van Hughes, the first backup unit to respond, testified that Debra said the jacket belonged to appellant and that Officer Bouchard told him this also. Officer Van Hughes was directed by his supervisor to contact Bartlett. Officer Van Hughes testified that the reason he made contact with Bartlett was that they needed somebody to take custody of the son who was taken to the police department. Officer Bouchard further testified that the officers were sent to the construction site to inquire about custody of the son. Officer Van Hughes acknowledged that more than one officer went to meet with Bartlett at the construction site because they believed it was his coat that contained the drugs.

Officer Steve T. Herring testified at the preliminary hearing that he, accompanied by Officer Van Hughes, made contact with Bartlett outside the house on which appellant was working. A gas generator outside was making noise so Officer Herring asked Bartlett if they could go inside and speak with him, to which Bartlett agreed. The noise still posed a problem inside so they stepped back outside at which time Officer Herring, for safety reasons, asked appellant to give him the rechargeable screw driver appellant was holding. Officer Herring took the screw driver, stepped back inside the house, and set it down on the floor next to a woman's purse. He observed the purse contained several syringes and a Crown Royal bag with a plastic cellophane bag sticking out. Appellant was using the purse to carry tools. Officer Herring searched the purse and found narcotics and additional drug paraphernalia. Bartlett was then handcuffed.

Officer Herring called for the other workers in the house to come out, which they did. While looking through the house for other individuals, the officers discovered the components of what proved to be a "boxed methamphetamine lab." A search warrant was secured for a full search of the residence.

Bartlett's motion to suppress evidence was denied by the trial court on the basis that appellant lacked standing to object to the search of his vehicle. In a dual suppression hearing with Debra's case, the trial court sustained her motion to suppress, citing the factual similarity to *State v. Schmitter*, 23 Kan. App. 2d 547, 933 P.2d 762 (1997). Inherent in the trial court's ruling on Debra's motion to suppress was the determination that the detention exceeded the scope of the traffic stop and was therefore, illegal and that the consent to search the vehicle was not purged of the taint of the illegal detention.

When reviewing a decision on a motion to suppress evidence, this court reviews the facts underlying the district court's suppression decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. See *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998). This court does not reweigh the evidence. However, the ultimate determination of suppression is a legal question requiring the appellate court's independent determination. See 263 Kan. at 732.

Bartlett argues that the trial court, after correctly suppressing the evidence against Debra as the fruit of an illegal search, erred in not also sustaining his motion to suppress. He argues that, as the owner of the car, he had standing to protect his legitimate privacy interests. The State, in its brief, does not contest the illegality of the prolonged detention of Debra but contends that appellant lacks standing to object to the *illegal detention* of Debra and, therefore, cannot complain that the subsequent search at the residential construction site was tainted by the illegal detention.

The general rule in Kansas is that an individual must have his or her own personal expectation of privacy in the area searched to have standing to challenge that search. *State v. Worrell*, 233 Kan. 968, 970, 666 P.2d 703 (1983). The State correctly argues that

Debra's right to be free from an *unlawful detention* is personal and cannot be objected to by appellant. Appellant, however, is not challenging the detention itself, but the search subsequent to the unlawful detention, which he argues, is personal to him.

Kansas law provides that one who is neither an owner nor in possession of an automobile lacks standing to invoke the constitutional guarantee of immunity from unreasonable search and seizure. *State v. Epperson*, 237 Kan. 707, 716, 703 P.2d 761 (1985); *State v. Roberts*, 210 Kan. 786, 789, 504 P.2d 242 (1972), *cert. denied* 414 U.S. 832 (1973). These cases involved defendants who were passengers in the cars that were searched. Ordinarily, a passenger lacks standing to challenge the validity of the search of another's car unless that person can show ownership, possession, or control of the vehicle. *State v. Brickhouse*, 20 Kan. App. 2d 495, 504, 890 P.2d 353, *rev. denied* 257 Kan. 1093 (1995).

One key factor in determining whether an individual has a reasonable expectation of privacy is the ability to exclude others. *State v. Sanders*, 5 Kan. App. 2d 189, 195, 614 P.2d 998 (1980). In *Sanders*, a friend of the defendant had been loaned a car by its owner. The friend then allowed the defendant to drive the vehicle which was pulled over for speeding. A subsequent vehicle search yielded evidence incriminating the defendant. The court concluded that the defendant was entitled to the same expectation of privacy as the owner, noting that the owner retained the ability to deprive the defendant of the possession of the vehicle. 5 Kan. App. 2d at 195.

We have been cited to no Kansas case law that specifically addresses the situation where a defendant is a nonpresent owner, and our research has revealed no Kansas case directly on point. We look to other jurisdictions.

In *United States v. Eldridge*, 302 F.2d 463 (4th Cir. 1962), the defendant loaned his vehicle to a friend. While in the friend's possession, and at the request of police, the friend voluntarily opened the trunk, in which evidence incriminating to the defendant was found. The court held that there was "no doubt" defendant had standing to contest the search of his vehicle, but that the search

was lawful because the friend validly consented to the search. 302 F.2d at 465-66. The court stated:

"Although he was temporarily out of possession of the car at the time of the search, the bailment was to be of short duration. It would be hyper-technical to say that he lacked a sufficient interest in his own car to challenge the manner in which the radios he has been found guilty of stealing were taken from it." 302 F.2d at 464-65.

In *United States v. Melendez-Garcia*, 28 F.3d 1046 (10th Cir. 1994), cited by appellant, the court examined a situation in which the defendant, who owned the vehicle searched, was riding in another vehicle. The court ruled that the defendant had been subjected to an illegal arrest but remanded on other grounds. In a footnote, the court indicated that the defendant had standing to object to the illegality of the search as owner of the searched vehicle. 28 F.2d at 1050, n.2.

In *U.S. v. Dotson*, 817 F.2d 1127, *modified* 821 F.2d 1034 (5th Cir. 1987), the defendant loaned his car to a friend, Owens, for a brief time so that Owens could wash the car. Title to the car was in the name of Dotson's sister, although the car "for all practical purposes" belonged to him. 817 F.2d at 1134. Law enforcement officials stopped Owens for speeding and asked if they could search the trunk. The search uncovered evidence of drug activity that was used to prosecute Dotson. The court ruled that Dotson had standing to challenge the search, stating: "[W]e hold that when a citizen loans his car to a friend for a limited period of time, the *de facto* owner or lawful possessor does not thereby lose his reasonable expectation of privacy in the vehicle." 817 F.2d at 1135.

In *U.S. v. Powell*, 929 F.2d 1190, 1195 (7th Cir. 1991), a pickup truck was pulled over en route from Arizona to Wyoming where the driver was to meet the owner. The court held that the defendant could challenge the search of the camper back, assuming he was the owner or had a possessory interest in the contents. 929 F.2d at 1196. See also *U.S. v. Jenkins*, 92 F.3d 430, 434-35 (6th Cir. 1996), *cert. denied* 520 U.S. 1170, 137 L. Ed. 2d 543, 117 S. Ct. 1436 (1997) (owner of trucking company who entrusted trucks and trailers to employee drivers and ordered loaded trailers locked and sealed to guard against shortages and employee theft had le-

gitimate expectation of privacy in the trailer); *U.S. v. Kye Soo Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990) (defendant who had rented a truck and placed a padlock on the truck's cargo hold door retained an expectation of privacy from governmental intrusion even though he had entrusted the truck and keys, including the key to the cargo hold, to two others).

Other cases have held a nonpresent owner lacks standing to contest the search of his vehicle. In *State v. Abramoff*, 114 Wis. 2d 206, 338 N.W.2d 502 (1983), the defendant gave complete control of his car and its contents to his friends for a trip between Florida and Wisconsin. The defendant did not accompany his friends on the trip which resulted in the seizure of marijuana. The court held that the defendant had no legitimate expectation of privacy in his vehicle during the trip and, thus, did not have standing to challenge a search of the car. A significant factor in the court's decision was the lengthy time and distance of the trip. 114 Wis. 2d at 211.

In *United States v. Dall*, 608 F.2d 910, 915 (1st Cir. 1979), the court stated that an owner's expectations of privacy are diminished when the owner gives over possession to another for the other's own uses to the temporary exclusion of the owner. The court further stated that the expectation of privacy attached to the driver's possession, not to the owner's title. 608 F.2d at 915. See also *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 449 (9th Cir. 1983) (vehicle owner could not contest the legality of the seizure of cocaine from the open passenger area while the automobile was in possession of a third party. Property ownership was a factor but not determinative of whether an individual's Fourth Amendment rights were violated).

An individual's legitimate expectation of privacy can be extinguished by a validly given consent to search, but this was not a factor here. The individual giving the consent to search must have the apparent authority to do so. *State v. Kriegh*, 23 Kan. App. 2d 935, 939, 937 P.2d 453 (1997). Although Debra had the apparent authority to consent to the search, her consent was deemed invalid.

The issue of a nonpresent owner's standing may be compared to cases of vehicle abandonment. This court in *State v. Brunson*, 13 Kan. App. 2d 384, Syl. ¶ 5, 771 P.2d 938, *rev. denied* 245 Kan.

786 (1989), set forth the following principle regarding the standing to challenge the search of an abandoned vehicle:

"[I]n determining the continued existence of Fourth Amendment property rights, whether the facts reveal a complete abandonment of an automobile in the strict property rights sense is not the issue. The issue is whether, by any good, sound, ordinary sense standard, the defendant abandoned any reasonable expectation to a continuation of his personal right against having his car searched."

Bartlett certainly had a legitimate expectation of privacy in his vehicle while it was parked at the residential construction site. The test, as borrowed from *Brunson*, is whether he abandoned any reasonable expectation to a continuation of his personal right against having his car searched by permitting his wife to take the car on the errand.

We are persuaded that Bartlett did not relinquish his personal right against having his car searched. His expectation that his privacy interests in his vehicle, and the contents therein, would be free from unlawful government intrusion was objectively reasonable. The errand was intended to be of short distance and duration. The trial court erred in ruling that Bartlett lacked standing to contest the search of his vehicle.

Bartlett further argues that any evidence discovered at the residential construction site was a direct result of the illegal search of his vehicle and, therefore, should be excluded as fruit of the poisonous tree. While it is clear that the evidence discovered in the vehicle itself should be suppressed as a direct result of the unlawful search, it is not so clear whether the evidence discovered at the construction site was also tainted.

The exclusionary rule reaches evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266 (1939). It "extends as well to the indirect as the direct products" of unconstitutional conduct. *Wong Sun v. United States*, 371 U.S. 471, 484, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); see *State v. McBarron*, 224 Kan. 710, 714, 585 P.2d 1041 (1978).

All evidence is not "fruit of the poisonous tree" simply because it would not have come to light *but* for the illegal actions of the police. The more apt question is whether, granting the primary

illegality, "'the evidence to which instant objection is made has been come at by *exploitation of that illegality* or instead by means sufficiently distinguishable to be purged of the primary taint.'" (Emphasis added.) 371 U.S. at 488 (quoting Maguire, Evidence of Guilt, 221 [1959]); see *State v. Dickenson*, 229 Kan. 152, 154, 621 P.2d 1002 (1981).

It is true that "but for" the illegal arrest of Debra the police would never have found drugs in the pocket of Bartlett's jacket in the back seat of the car and would never have gone to the residence to contact appellant. The proper test is whether the trip to the site involved the exploitation of the initial illegality. The purpose of the trip to the construction site could have been: (1) to further investigate the appellant; (2) to make arrangements for the custody of the son; or (3) both purposes. It is evident that one officer could easily have taken the boy back to his stepfather, but Officer Van Hughes testified that more than one officer went to the site because they believed it was Bartlett's jacket that contained the drugs, indicating they went to the site anticipating a search.

Due to his ruling that appellant lacked standing, the trial judge never had reason to rule whether the evidence discovered subsequent to the unlawful search was tainted fruit of the poisonous tree. Whether evidence is admissible under the fruit of the poisonous tree doctrine is a fact question for the trial court to determine at a hearing on the motion to suppress. *State v. Childers*, 222 Kan. 32, 40-41, 563 P.2d 999 (1977). This case must be remanded to the trial court for this determination.

Appellant argues in his third issue that the trial court erred by ruling that the warrantless search at the construction site was proper. This is part of the determination to be made by the trial court during the further proceedings.

Reversed and remanded for further proceedings.