(85 P.3d 711)

No. 90,970

STATE OF KANSAS, *Appellant*, v. JOSE GONZALEZ, *Appellee*.

Opinion filed March 12, 2004.

*Vernon E. Buck*, assistant county attorney, *J. Marcus Goodman*, county attorney, and *Phill Kline*, attorney general, for appellant.

*Don W. Lill*, of Emporia, for appellee.

Before RULON, C.J., ELLIOTT and MALONE, JJ.

MALONE, J.: The State appeals the district court's order suppressing evidence seized from a motel room occupied by Jose Gonzalez. The central issue on appeal is whether Gonzalez has standing to challenge the search of the motel room he was visiting, including the bathroom within the motel room.

On the evening of March 28, 2003, Emporia police officer Bill Ross and court services officer (CSO) Robert Sullivan were working with other law enforcement officers to check on probationers. The group conducted unscheduled home visits, bar checks, and surveillance of those on probation.

Ross and Sullivan contacted Jessica Moreno at a friend's residence. Moreno was on probation under Sullivan's supervision. Moreno was told she should not be there because alcohol was present. Moreno informed Sullivan she had plans to spend the evening with her friend, Lindsey Tabares. Moreno passed a breath test and told Sullivan she would pass a drug test as well. Moreno was then released.

In the early morning of March 29, 2003, the law enforcement officers were checking local motel parking lots. Ross and Sullivan were looking for Moreno's vehicle and found it at the Budget Host Inn at about 1 a.m. The officers ascertained that room 208 was registered to Tabares. The officers returned at 2 a.m. and found Tabares' car next to Moreno's vehicle at the motel. Officers listened outside the door of room 208 and heard Moreno's voice. Sullivan knocked on the door; when someone inside asked who was there, Sullivan said "open the door its cold out here." A second inquiry from within received the same response.

When the motel room door opened, Sullivan observed seven or eight people in the room. Sullivan immediately observed Gonzalez looking out from the bathroom. As soon as Gonzalez saw Sullivan, Gonzalez slammed the bathroom door. Sullivan immediately entered the room and went to the bathroom to prevent anything from being flushed down the toilet. In the bathroom, officers found a small piece of aluminum foil on the floor by the toilet. The foil contained an off-white powder which appeared to be methamphetamine.

Thereafter, the officers searched the rest of the motel room. Throughout the room there were numerous empty beer bottles and an empty liquor bottle. Several of the bottles contained crumpled pieces of aluminum foil. In the room near Tabares and Moreno, officers found pieces of plastic containing what appeared to be rocks of cocaine. There was no luggage which could be seen, no one was sleeping, and no one was wearing pajamas. Kevin Hines, another person on probation under Sullivan's supervision, also was in the room. Hines and Morales both tested positive for using alcohol.

Gonzalez was charged in Lyon County District Court with possession of methamphetamine in violation of K.S.A. 65-4160, and possession of drug paraphernalia in violation of K.S.A. 65-4152. Shortly before trial, Gonzalez filed a motion to suppress the evidence seized in the motel room. Gonzalez argued law enforcement lacked authority to enter the motel room or the bathroom in which he was found.

A suppression hearing was held on July 1, 2003. The only witnesses were Sullivan and Rajubhai Patel, owner of the Budget Host Inn. Patel testified that on March 28, 2003, a person identified as Lindsey Tabares registered at the motel and rented room 208. The registration card listed Tabares as the only occupant of the room. The court also took judicial notice of Moreno's probation agreement in Case No. 02CR61. Gonzalez did not testify at the suppression hearing.

After hearing the evidence, the court granted the motion to suppress, finding that police lacked authority to enter the motel room and that Gonzalez had an expectation of privacy in the bathroom.

The State timely perfected this interlocutory appeal.

When reviewing a motion to suppress evidence, the appellate court determines whether the factual underpinnings of the trial court's decision are supported by substantial competent evidence. However, the ultimate legal conclusion drawn from those facts is a legal question requiring the appellate court to apply a de novo standard of review. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001).

However, a defendant cannot object to the seizure of evidence without proper standing to challenge the validity of the search. On the issue of standing, the burden is on the defendant to show an expectation of privacy in the property searched. A defendant may testify at a suppression hearing to establish his or her standing to challenge a search without jeopardizing his or her defense at trial. *State v. Cruz,* 15 Kan. App. 2d 476, 484, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991); see *State v. Sumner,* 210 Kan. 802, 803-04, 504 P.2d 239 (1972).

The State argues that Moreno's probation agreement authorized the search of the motel room. Although the probation agreement is not in the record on appeal, there appears to be no dispute that Moreno's probation agreement permitted CSOs "to visit you at your home or elsewhere." However, there is no claim that the probation agreement specifically consented to searches. Moreover, the State cites no authority that a probationer's agreement allowing "visits" constitutes a waiver of a third person's right to object to warrantless searches.

Regardless of whether the officers had consent to enter the room or authority under the probation agreement, the central issue is whether Gonzalez has standing to challenge the search of the Budget Host Inn room. The general rule in Kansas is that an individual must have a personal expectation of privacy in the area searched to have standing to challenge that search. *State v. Bartlett,* 27 Kan. App. 2d 143, 146, 999 P.2d 274 (2000).

Generally, courts have recognized that overnight guests have expectations of privacy in a host's home. *State v. Yardley,* 267 Kan. 37, 41, 978 P.2d 886 (1999) (citing *Minnesota v. Olson,* 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684 [1990]). Likewise, officers cannot detain and search social guests found in a home being searched based on a search warrant absent (1) a warrant allowing the search of all persons found within the home; (2) independent probable cause of a crime involving the guest; or (3) a reasonable belief the person is armed. *State v. Vandiver,* 257 Kan. 53, 62-64, 891 P.2d 350 (1995).

While the standards applicable to hotel or motel rooms are similar to those involved when a residence is searched, there are im-

portant differences as well. The constitutional protection from un-reasonable search and seizure is based on the right of the individual to privacy rather than the proprietary interest of the individual in the premises. *State v. Chiles*, 226 Kan. 140, 146-47, 595 P.2d 1130 (1979). In *Chiles*, the court stated that as a general rule the protection against unreasonable search and seizure extends to hotel and motel rooms. 226 Kan. at 146. However, the court held that the defendant had abandoned his expectation of privacy in his motel room when he left and surrendered the keys to management before the search. 226 Kan. at 147. In *Chiles*, the party challenging the search was the person who rented the room. The only evidence before the court in this case, however, was that the room was rented by Tabares, not Gonzalez.

Kansas has little law on the standing of guests visiting in hotel or motel rooms. Other courts have held that a defendant cannot establish a reasonable expectation of privacy in a hotel or motel room which is registered to another person absent a showing of a relationship with the registered guest. See *U.S. v. Cantley*, 130 F.3d 1371, 1377-78 (10th Cir. 1997), *cert. denied* 522 U.S. 1137 (1998) (defendant lacked standing to object when room was registered to another and defendant failed to show his relationship to the registered guest); *U.S. v. Deninno*, 29 F.3d 572 (10th Cir. 1994), *cert. denied* 513 U.S. 1158 (1995) (defendant lacked standing to object to search of hotel room registered to another); *U.S. v. Carr*, 939 F.2d 1442, 1446 (10th Cir. 1991) (absent evidence defendant was an invited overnight guest of the registered hotel guest, the court held he had no reasonable expectation of privacy); *U.S. v. Conway*, 854 F. Supp. 834, 838 (D. Kan. 1994) (mere presence in motel room insufficient to give standing to object to a search); *State v. Coleman*, 118 Ohio App. 3d 522, 525-26, 693 N.E.2d 825 (1997) (occupant of motel room registered to another who was not an overnight guest had no expectation of privacy protected by the Fourth Amendment).

Here, there is no evidence that Gonzalez was an invited overnight guest of the registered room occupant, Tabares. Nothing in the record indicates that Gonzalez was listed on the registration card as an overnight guest or that the motel's management knew

about his presence in the room. Although it was 2 a.m. at the time of the search, Gonzalez was not in bed or dressed for sleeping. Neither Tabares nor Gonzalez testified to establish their relationship or whether Gonzalez was an overnight guest of Tabares. The burden was upon Gonzalez on the issue of standing. See *Cruz*, 15 Kan. App. 2d at 484.

We conclude the district court erred by finding that Gonzalez had standing to object to the officers' entry into the motel room. Gonzalez had no reasonable expectation of privacy in the motel room generally. Gonzalez lacked standing to object to the seizure of the drugs found in the open part of the motel room.

Even if Gonzalez did not have standing to contest the search of the motel room generally, there is the additional question of whether he had a reasonable expectation of privacy in the bathroom that gives him standing to object to that part of the search. Gonzalez was only charged with the methamphetamine and paraphernalia found in the bathroom.

One's presence in a restroom on another's property does not automatically create a recognizable expectation of privacy. The State cites *State v. Allen*, 21 Kan. App. 2d 811, 908 P.2d 1324 (1995), *rev. denied* 259 Kan. 928 (1996). In *Allen*, a police officer saw Allen driving a vehicle. Believing Allen's driver's license had been suspended, the officer began a pursuit. Allen refused to stop his vehicle and drove in a manner attempting to elude the officer. Allen finally stopped his car, entered into an auto body repair establishment and locked himself in the restroom. After Allen exited the restroom, the police searched it and found hidden narcotics. This court did not hesitate in concluding Allen had no reasonable expectation of privacy in the restroom and upheld the search. 21 Kan. App. 2d at 814.

However, the *Allen* holding provides little assistance in this case. The search in *Allen* took place after the defendant voluntarily left the restroom of a business. In this case, law enforcement officials opened the door and entered a bathroom known to be occupied.

A more relevant case is *State v. Mudloff*, 29 Kan. App. 2d 1075, 36 P.3d 326 (2001). In *Mudloff*, the defendant had entered the stall in a public restroom with another person and had an audible

conversation, causing a passerby to believe there was activity occurring not in accordance with the stall's intended use. Police, who responded to a tip, knocked on the bathroom stall door and then pushed it open. Defendant and another woman were standing in the stall and defendant was holding a baggy containing white powder. This court held the defendant had no reasonable expectation of privacy and that the motion to suppress was improperly granted. The court noted that "an individual can assert a subjective expectation of privacy in a public bathroom stall, but society will not recognize that expectation as reasonable if the stall's occupant is engaged in activity other than the stall's intended use." 29 Kan. App. 2d at 1077.

Here, when the officers entered the motel room, Gonzalez was observed standing at the entrance of the bathroom with the door open. When Gonzalez saw the officers, he slammed shut the bathroom door. Within seconds, Sullivan entered the bathroom to prevent anything from being flushed down the toilet.

A person legitimately using a bathroom has a reasonable expectation to privacy society would recognize. However, we find the fact that the bathroom door was initially open when the officers entered the motel room, and the fact that the door was shut for only seconds prior to Sullivan's entry, are relevant to the question of Gonzalez' reasonable expectation of privacy inside the bathroom. We do not know from the record how long Gonzalez had been inside the bathroom prior to the officers' entry into the motel room. We do not know whether Gonzalez was attempting to use the bathroom for its intended use, although it requires a degree of naivete to conclude that Gonzalez shut the door at that precise instant because nature was calling. The fact remains Gonzalez did not testify at the suppression hearing and it was his burden to show an expectation of privacy in the property searched. See *Cruz*, 15 Kan. App. 2d at 484.

Based upon the record presented, we find that Gonzalez lacked standing to object to the entry and search of the motel room in general. He further lacked a legitimate expectation of privacy inside the bathroom under these facts. Because Gonzalez lacked standing to object, we do not reach the merits of whether the of-

ficers had probable cause under the circumstances to seize any of the evidence.

We conclude that the district court erred in suppressing the evidence against Gonzalez. This case is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.