No. 88,842
No. 88,843

STATE OF KANSAS, *Appellant*, v. GARY BARNES, *Appellee*.

STATE OF KANSAS, *Appellant*, v. KARLA BOYLAN, *Appellee*.

64 P.3d 405

Opinion filed March 7, 2003.

*Tony Cruz*, assistant county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Rebecca E. Woodman*, assistant appellate defender, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

KNUDSON, J.: The State appeals the district court's order dismissing schoolyard drug offenses brought against Gary Barnes and Karla Boylan. The district court concluded the Kansas schoolyard statute, K.S.A. 65-4161(d), does not apply to a suspect who by happenstance passes through the protected zone in a vehicle and is subsequently apprehended. After consolidation, we ordered transfer from the Court of Appeals. See K.S.A. 20-3018(c).

Under the facts of this appeal, we agree with the district court that K.S.A. 65-4161(d) is not applicable. Accordingly, the State's appeal is denied.

On the issue presented, the underlying facts are not in material dispute. Further, we presume probable cause to arrest the defendants and search the vehicle they were occupying. Officer Chad Rains of the Junction City Police Department testified that on the evening of October 26, 2001, he was performing surveillance on several houses where people were known to traffic narcotics and was attempting to locate people for whom narcotics warrants had been issued. As Rains drove past Jason Ferreira's house at 517 West Thirteenth Street, he saw a silver Chevy Lumina pull in the alley behind Ferreira's house, turn off its lights, and park. Rains testified he knew it was Ferreira's house because he had previously assisted in carrying out a search warrant there, had spoken with Ferreira, and had heard about other narcotics traffic at the residence. Rains testified that 2 days before he had caught someone after a short car chase in that same backyard with methamphetamine. In addition, Rains testified that approximately 3 weeks to 1 month prior to this incident, he had received an anonymous telephone tip that a white male from Wichita driving a Chevy Lumina was selling narcotics.

Rains did not see anyone exit the vehicle, so he drove around the block once, thinking the occupants of the vehicle were "doing something." After a couple of minutes, Rains saw Barnes exit the vehicle, walk around to the passenger side, and open the passenger door. Rains said Barnes then walked back around to the driver's side and got back in the vehicle. Rains found these activities suspicious and thought the occupants of the vehicle might be planning a burglary because of the narcotics at the house, so he called another unit for backup.

Rains stated that after Barnes got back in the vehicle, it was another minute or 2 before he finally turned on the headlights and drove down the alley to Webster Street. Rains followed, and in his testimony described the 3- to 5-minute route that the Barnes vehicle traveled before Junction City police officers approached the vehicle in the parking lot of Wendy's restaurant:

"[The vehicle] went down the alley to Webster, and took a right straight over to Thirteenth Street, and went east on Thirteenth Street to Jackson, took a right and went south on Jackson down to Third Street, took a left on Third Street, which

goes right past Franklin school, went down to Adams, took a left on Adams back north to Fifth.

. . . .

"After they went to Adams Street, they traveled to Fifth, took a left on Fifth, went back west on Madison, took a right on Madison, went back north to Sixth Street, and then they took a left on Sixth Street and went all the way up back to Jackson, and took a right on Jackson, started to go north, and they pulled up kind of right up in Seventh Street, but then they pulled right up to Wendy's at 440 West Sixth."

The Barnes vehicle passed Franklin Elementary School during the course of this winding route. Rains testified that the vehicle passed within 1,000 feet of the school. On cross-examination, Rains stated:

"Q. Well, the fact that they passed by Franklin school was coincidental?
"A. I guess, unless they know somebody there that I don't know about.
"Q. School was closed?
"A. School was closed.
"Q. They didn't stop the vehicle?
"A. No.
"Q. Weren't any kids out there?
"A. No, there was not.
"Q. Premises appeared to be vacant?
"A. Yes, it did."

After the vehicle pulled into Wendy's, the patrol unit caught up with it and initiated contact with the driver at approximately 11:45 p.m. Sergeant John Hagerty was in the patrol car and testified that Barnes' vehicle pulled into the parking lot at Wendy's after they activated their lights. Rains advised the canine unit of the location of the vehicle.

Hagerty asked the driver for his name, and Barnes initially identified himself as Jeffrey Sampson. Later, Rains confirmed his identity as Gary W. Barnes. Barnes advised Rains he did not know of any illegal narcotics inside the vehicle.

Rains testified that he spoke with Boylan, who was sitting in the front passenger seat of the vehicle. Rains told Boylan why he had them pulled over, checked her identification, and asked why they were in the alley behind 517 West Thirteenth Street. According to Rains, Boylan stated that they had just driven up from Wichita to

see a friend of Barnes named Jason Ferreira, who lived at that residence. Rains asked Boylan to step out of the vehicle, spoke with her, asked her if any illegal contraband or narcotics were in the vehicle, and she said, "none that she knew of."

After the canine unit arrived, the dog alerted at the vehicle, indicating the possibility of narcotics in the vehicle. Rains began searching the vehicle on the passenger side and found a purse sitting on the floorboard which contained documents identifying Boylan. Inside the purse, Rains found a purple Ziploc baggie containing methamphetamine. The officers also found a black bag containing a gray lock box, a gray stocking cap, and a .22 revolver. Inside the lock box, the officers found methamphetamine, syringes, hydrocodone pills, marijuana, and scales. The methamphetamine inside the lock box was packaged in eight individual purple baggies. The lock box also contained a birth certificate for D.E.B., Boylan's son. Rains placed Barnes and Boylan under arrest.

Kansas Bureau of Investigation (KBI) lab tests were positive for marijuana, methamphetamine, and hydrocodone. Not all of the baggies of methamphetamine were weighed by the KBI, but three of the eight baggies of methamphetamine contained 1.31 grams, 1.40 grams, and 1.46 grams.

The Geary County Attorney charged Barnes with one count of possession of methamphetamine with intent to sell within 1,000 feet of a school zone in violation of K.S.A. 65-4161(a) and (d); one count of possession of methamphetamine in violation of K.S.A. 65-4160(a); two counts of possession of drug paraphernalia in violation of K.S.A. 2001 Supp. 65-4152(a)(2) and (3); one count of possession of a controlled substance with no drug tax stamp in violation of K.S.A. 79-5204(a) and K.S.A. 79-5208; one count of possession of hydrocodone in violation of K.S.A. 65-4160(a); one count of criminal possession of a firearm in violation of K.S.A. 2001 Supp. 21-4204(a)(2); one count of obstructing official duty in violation of K.S.A. 21-3808(a); and one count of possession of marijuana in violation of K.S.A. 65-4162(a)(3).

Boylan was charged with one count of possession of methamphetamine with intent to sell within 1,000 feet of a school zone in violation of K.S.A. 65-4161(a) and (d); one count of possession of

methamphetamine in violation of K.S.A. 65-4160(a); two counts of possession of drug paraphernalia in violation of K.S.A. 2001 Supp. 65-4152(a)(2) and (3); one count of possession of a controlled substance with no drug tax stamp in violation of K.S.A. 79-5204(a) and K.S.A. 79-5208; one count of possession of hydrocodone in violation of K.S.A. 65-4160(a); and one count of possession of marijuana in violation of K.S.A. 65-4162(a)(3).

After both defendants were bound over to stand trial, Barnes filed a motion challenging the sufficiency of the evidence in regard to Count 1. Barnes' motion argued:

"While there is no case on point involving mere passage through a school zone, common sense dictates that some act independent of mere passage is required to establish even probable cause that the offense of possession with intent to sell is being committed within the school zone. Herein, there is no such independent proof."

The district court granted Barnes' motion challenging the sufficiency of the evidence regarding Count 1. In its memorandum decision, the district court found that "mere 'passage' through a school zone is insufficient to charge a defendant with a school zone violation" and consequently dismissed those specific charges against both defendants.

On appeal, the State contends the defendants were properly charged even if they only by chance passed through the school zone. The State argues the legislative intent in enacting K.S.A. 65-4161(d) was to create drug-free school zones; thus, it is not material whether Barnes and Boylan were coincidentally passing through the zone or intended to sell drugs somewhere other than within 1,000 feet of a school. Conversely, the defendants maintain adoption of the State's interpretation of K.S.A. 65-4161(d) would extend the schoolyard statute beyond all rational meaning and purpose, would invite police and prosecutorial abuse, and could potentially create the very risks meant to be averted by the law.

The issue presented is one of first impression and requires interpretation of K.S.A. 65-4161(d). Our standard of review is de novo. See *State v. Seabury*, 267 Kan. 431, 435, 985 P.2d 1162 (1999) (citing *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 [1998]).

K.S.A. 65-4161 was enacted in 1994 as part of the Uniform Controlled Substances Act. See L. 1994, ch. 291, sec. 86; L. 1994, ch. 338, sec. 2. The statute reads, in pertinent part:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with intent to sell, deliver or distribute; prescribe; administer; deliver; distribute; dispense or compound any opiates, opium or narcotic drugs, or any stimulant . . . [including amphetamine, methamphetamine and their immediate precursors (see Notes on Use, PIK Crim. 3d 67.13-C)]. Except as provided in subsections (b), (c) and (d), any person who violates this subsection shall be guilty of a drug severity level 3 felony.

. . . .

"(d) Notwithstanding any other provision of law, upon conviction of any person for a first offense pursuant to subsection (a), such person shall be guilty of a drug severity level 2 felony if such person is 18 or more years of age and the substances involved were possessed with intent to sell, deliver or distribute; sold or offered for sale in or on, or within 1,000 feet of any school property upon which is located a structure used by a . . . school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12.

"Nothing in this subsection shall be construed as requiring that school be in session or that classes are actually being held at the time of the offense or that children must be present within the structure or on the property during the time of any alleged criminal act. If the structure or property meets the description above, the actual use of that structure or property at the time alleged shall not be a defense to the crime charged or the sentence imposed." K.S.A. 65-4161.

Both parties agree, as do we, that since the Kansas statute was modeled after its federal counterpart, 21 U.S.C. § 860 (2001), federal case law is persuasive authority for our consideration. However, we will first discuss Kansas decisional law wherein the reach of K.S.A. 65-4161(d) has been discussed.

In *State v. Swafford*, 20 Kan. App. 2d 563, 890 P.2d 368, *rev. denied* 257 Kan. 1095 (1995), the Kansas Court of Appeals considered whether a defendant's knowledge of the proximity of a school was an essential element of the crime described in the predecessor statute to K.S.A. 65-4161. There, after selling rock cocaine to a police informant at a house rented for the informant by police, Swafford was convicted of the sale of cocaine within 1,000 feet of a school under K.S.A. 65-4127a(a) and (c) (Furse 1992). Swafford challenged his conviction, arguing that an essential element of the

crime of sale of cocaine within 1,000 feet of a school was a defendant's knowledge that the sale took place in the vicinity of school property. The Court of Appeals determined that the statute did not expressly require proof of knowledge of the proximity of a school after considering the legislative history of the state schoolyard statute and its federal counterpart. 20 Kan. App. 2d at 566. The court, citing *United States v. Falu*, 776 F.2d 46 (2d Cir. 1985), stated:

"The substance of the statute and the legislative history cited by Swafford show that 65-4127a(c) was modeled after similar statutes enacted in many other jurisdictions. The original model is the federal 'schoolyard statute,' 21 U.S.C. § 860 (1990) (formerly 21 U.S.C. § 845a [1988]). It provides that anyone who violates 21 U.S.C. § 841(a)(1)(1988) by distributing, possessing with intent to distribute, or manufacturing a controlled substance in, on, or within 1,000 feet of school property is subject to imprisonment for up to twice that authorized for a violation of 21 U.S.C. § 841(a)(1). It is similar in language and structure to 65-4127a(c).

. . . .

"The legislative history cited by Swafford reveals that, like the federal schoolyard statute on which it was modeled, 65-4127a(c) was intended to create drug-free school zones. It was designed to protect young people from drug use and the violence and other negative influences that accompany drug dealing. Children are exposed to these negative influences when drug deals are conducted near schools regardless of whether the dealers know they are within 1,000 feet of a school.

"Requiring proof that Swafford knew a school was within 1,000 feet could impose an onerous burden on police and prosecutors, which would be contrary to the clear purpose of the statute. Swafford's knowledge of the proximity of a school is not an essential element of the crime of selling cocaine within 1,000 feet of a school under 65-4127a(c)." 20 Kan. App. 2d at 566-67.

In *State v. Penny*, 22 Kan. App. 2d 212, 914 P.2d 960 (1996), the Court of Appeals considered whether a defendant must intend to sell cocaine within 1,000 feet of school property to trigger a violation of the statute. Because the facts were not in material dispute, the Court of Appeals did not describe in detail the events surrounding the defendant's apprehension. The opinion only states that Penny had purchased cocaine from an informant and was arrested and charged with possession of cocaine with intent to sell within 1,000 feet of a school. During deliberations, the jury asked the district court whether PIK Crim. 3d 67.13-B meant that a defendant must intend to sell a narcotic drug or stimulant within

1,000 feet of a school. The district court modified the verdict form to read: " 'We the jury, find the defendant guilty as charged in Count I of possession of a narcotic drug, cocaine, within 1,000 feet of school property with intent to sell, deliver or distribute.' " 22 Kan. App. 2d at 214. Following his conviction, Penny appealed, arguing that the schoolyard statute was unconstitutionally vague and that the district court erred in modifying the verdict form. After reviewing the language of the statute, the Court of Appeals held that the phrase " 'in or on, or within 1,000 feet of any school property' " did not modify " 'with intent to sell,' " and affirmed Penny's conviction. 22 Kan. App. 2d 212, Syl. ¶ 2. In *Penny*, the court explained:

"We do not agree with defendant's premise that 65-4127a(d) is reasonably susceptible to more than one interpretation. We base our opinion upon a reading of the statute, legislative history, and the judicial opinions of other jurisdictions that have considered this very issue under comparable statutes.

"We believe that 65-4127a(d) is only subject to one construction that is reasonable. It is intended to provide enhanced punishment for offenders who commit certain acts prohibited under 65-4127a(b) if committed within 1,000 feet of school property. Any other construction ignores consideration of the harm to be prevented—drug dealing within the protected school zone.

. . . .

"It is axiomatic that a drug deal occurs when a dealer buys drugs, not just when a dealer sells drugs. It was the clear intent of the Kansas Legislature to establish drug-free zones in and around schools. Penny's suggested construction of 65-4127a(d) is wholly inconsistent with legislative intent that has been clearly expressed. Also, just as in *Swafford*, such a construction would place an onerous burden on police and prosecutors.

"We have also reviewed decisional law from other jurisdictions that have statutes similar to 65-4127a(d). We will not extend this opinion with a detailed analysis of those cases. However, decisions of the federal circuit courts that have considered this same issue under the comparable federal schoolyard statute, 21 U.S.C. § 860 (1994), are considered persuasive. Each of the circuit courts that have considered this issue have concluded that mere possession with intent to sell elsewhere is sufficient. [Citations omitted.]

"We hold 65-4127a(d) to be neither vague nor ambiguous and agree with the district court's interpretation of the statute." 22 Kan. App. 2d at 215-16.

Turning next to federal case law interpreting 21 U.S.C. § 860, we note *United States v. Harris*, 313 F.3d 1228 (10th Cir. 2002). In *Harris*, the defendant broke away during a protective search of

his person and, while being chased, jumped over a fence onto a local elementary school's playground. The pursuing police officers saw Harris reach into one of his boots, pull out a white substance wrapped in plastic or cellophane, and throw it over the fence. Harris was apprehended on the playground; the discarded package contained cocaine base. The defendant was charged with and convicted of possession with intent to distribute cocaine base within 1,000 feet of a school.

On appeal, Harris argued that he could not be convicted of violating the schoolyard statute because the government did not prove an essential element of the crime, his intent to distribute cocaine base within 1,000 feet of a school. In rejecting Harris' argument, Judge Van Bebber, speaking for the court, provided an extensive survey of federal case law interpreting the schoolyard statute:

"Five of our sister circuits have previously addressed the precise issue before us today, and each has adopted a broad reading of § 860(a) by holding that the government need only prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them *somewhere*. *See United States v. Ortiz*, 146 F.3d 25, 28-30 (1st Cir. 1998); *United States v. Lloyd*, 10 F.3d 1197, 1218 (6th Cir. 1993); *United States v. McDonald*, 991 F.2d 866, 868-71 (D.C. Cir. 1993); *United States v. Rodriguez*, 961 F.2d 1089, 1090-95 (3d Cir. 1992); *United States v. Wake*, 948 F.2d 1422, 1429-34 (5th Cir. 1991); *see also United States v. Hohn*, 8 F.3d 1301, 1307 (8th Cir. 1993) (stating, in the context of addressing the defendant's claim that § 860(a) should not apply because the school he was accused of distributing drugs within 1,000 feet of was closed for remodeling at the time, that '[f]or conviction, [§ 860(a)] simply requires that the defendant have an intent to distribute (or manufacture) a controlled substance and at the time be within 1000 feet of a school.'); *United States v. Walker*, 993 F.2d 196, 198-99 (9th Cir. 1993) (stating that for purposes of applying the sentence enhancement provided for in U.S.S.G. § 2D1.2, '[i]t does not matter whether the drugs were sold on school property or to school children, or whether the drugs were merely possessed near the protected location by someone unconnected to the school. It suffices that the drugs are present within 1,000 feet of the school.'). On the other hand, several district courts have reached the opposite conclusion and held that the government must prove that the defendant intended to distribute the illegal drugs within 1,000 feet of a school. *See United States v. Watson*, 788 F. Supp. 22, 23-25 (D.D.C. 1992), *overruled by McDonald*, 991 F.2d at 868-71; *United States v. McDonald*, 777 F. Supp. 44, 45-47 (D.D.C. 1991), *aff'd on other grounds*, 991 F.2d 866 (D.C. Cir. 1993); *United States v. Testa*, 768

F. Supp. 221, 222-23 (N.D.Ill. 1991); *United States v. Coates*, 739 F. Supp. 146, 152-53 (S.D.N.Y. 1990); *United States v. Roberts*, 735 F. Supp. 537, 538-43 (S.D.N.Y. 1990); *United States v. Liranzo*, 729 F. Supp. 1012, 1013-14 (S.D.N.Y. 1990)." 313 F.3d at 1238-39.

The *Harris* panel of the 10th Circuit then concluded: "We find the reasoning of our sister circuits persuasive and adopt it as the law of this circuit: the government must prove that the defendant possessed illegal drugs within 1,000 feet of a school and intended to distribute them *somewhere.*" 313 F.3d at 1239.

To summarize, based upon *Penny* and the persuasive federal authorities we have referenced, we come to the inescapable conclusion that K.S.A. 65-4161(d) is a strict liability crime that does not require the State to prove *mens rea*—possession of the required quantity of drugs within 1,000 feet of a school and an intent to distribute the drugs somewhere is all that must be proved to support a conviction. This, however, does not squarely answer the question before us.

Missing from the *Harris* survey of cases is *United States v. Alston*, 832 F. Supp. 1 (D.D.C. 1993). In *Alston,* the police stopped a vehicle that was on their "hot sheet" for stolen vehicles. The hot sheet indicated that Alston would be driving the vehicle and that he might be armed. After Alston was taken to the rear of the vehicle for questioning, an officer noticed part of a plastic baggie protruding from the glove box of the car. Upon inspection, the officer found that the baggie was filled with cocaine, and the glove box contained additional bags of drugs and three handguns.

Alston was charged with various crimes but, prior to trial, moved to dismiss the charge against him for possession of a controlled substance within 1,000 feet of a school in violation of 21 U.S.C. § 860. The district court noted that it was bound by the D.C. Circuit Court of Appeals' interpretation of the statute in *United States v. McDonald,* 991 F.2d 866 (D.C. Cir. 1993), which held that the government need not demonstrate intent to distribute within 1,000 feet of a school so long as it established illegal possession of drugs in that zone. The district court, however, determined that the *McDonald* interpretation must be viewed "in light of the facts of this case and the overall purposes of the statute . . . 'to keep

drug violence away from the schools.' " 832 F. Supp. at 6. The *Alston* court found the facts presented to be significantly different from those of *McDonald*:

"In *McDonald* the defendant had a large quantity of drugs in a house across the street from a school. In this case, Alston had drugs in a vehicle which first came to the attention of police officers away from any school. Only when the officers followed the vehicle through a school zone did the officers stop the vehicle. No reasonable explanation was given as to why the officers delayed pulling over Alston when they first spotted him. It is possible that the officers were merely looking for back up before the stop. On the other hand, it is also possible the police wanted to just follow Alston until he passed through a school zone so they could get an enhanced sentence. (From prior arrests, the officers could suspect that Alston might have guns and drugs.)

"Under these facts, where the police had time to stop the Acura prior to it reaching a school zone, 21 U.S.C. Section 860(a), as interpreted by the D.C. Circuit, cannot be used to enhance Alston's sentence. To do so would encourage the police to chase drug suspects through school zones, or to delay arrests of suspected drug suspects until a school zone violation has occurred. This would bring 'violence' to the schools, and is contrary to the purpose of the statute. Accordingly, under the narrow facts of this case, the court is dismissing count 2 of the indictment.

"If the government wants to appeal the dismissal of count 2 to the Circuit Court, they may do so. *U.S. v. McDonald* simply did not visualize the situation where the police have an opportunity to stop a suspect prior to the suspect reaching a school zone, but choose not to do so until after the suspect has traveled through that zone. Alston did not stop at the school, and may not have even gone by the school but for the police following him." 832 F. Supp. at 7.

We also find significant *United States v. Coates*, 739 F. Supp. 146 (S.D.N.Y. 1990). We note *Coates* was not appealed by the government, and the Second Circuit has not weighed in on the issue before us. In *Coates*, the defendants were charged with possession with intent to distribute 4,018 grams of cocaine within 1,000 feet of a school following their arrest on board a train. The train station was located within 1,000 feet of a technical school in an office complex adjoining the train station. The defendants moved to dismiss the schoolyard statute charges, arguing the charges to be inapplicable to the established facts. In sustaining the defendants' motion, the court held:

"There is no evidence that [the defendants] were in Penn Station to distribute cocaine within 1,000 feet of a school, or, for that matter, to distribute cocaine

within New York State at all. Indeed, Coates testified on cross-examination that he and [the codefendant] were transporting the cocaine to Maryland.

"To charge a schoolyard count in these circumstances stretches the scope of the statute beyond logical and acceptable bounds. The statute cannot be meant to reach the circumstances of [the defendants'] presence, undoubtedly unknowing, within a 1,000 feet of a school while ensconced in a railway car. To posit liability under § 845a in these fortuitous circumstances is simply overreaching. To hold otherwise would be to mandate charging a schoolhouse count every time defendants on trains, or any other means of transportation, speed by a school on their way to a narcotics sale." 739 F. Supp. at 153.

Before deciding whether K.S.A. 65-4161(d) is applicable under the facts and circumstances of the case presented on appeal, we must consider rules of statutory construction. We are mindful that "[i]n determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *State v. Le*, 260 Kan. 845, Syl. ¶ 3, 926 P.2d 638 (1996). We also know the "legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results." 260 Kan. 845, Syl. ¶ 4.

We conclude, under the facts of this case, that K.S.A. 65-4161(d) is not applicable and the district court did not err in dismissing the related counts against the defendants. In arriving at this decision, we are impressed with the reasoning expressed in *Alston* and *Coates*, and we have a firm conviction our holding is consistent with legislative intent. We do not believe the Kansas Legislature intended the schoolyard statute to apply to an individual not apprehended within the school zone and where uninterrupted passage in an automobile through the school zone was fortuitous. As stated in *Coates*, a contrary holding would stretch the statute beyond logical and acceptable bounds. We will not conclude the legislature intended such an unreasonable result.

This is a narrow holding based upon unique facts. Our decision should not be read to be a sweeping pronouncement that will unreasonably impact upon law enforcement's efforts to maintain drug-free school zones. We voice no opinion as to the reach of

K.S.A. 65-4161(d) under entirely different circumstances involving vehicles stopped and searched in or near a protected school zone. Those decisions must await another day.

Appeal denied.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned.