(257 P.3d 1283)
No. 103,735

STATE OF KANSAS, *Appellee*, v. THOMAS PERKINS, *Appellant*.

Opinion filed July 15, 2011.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*R. Douglas Sebelius*, county attorney, and *Steve Six*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON, J., and LARSON, S.J.

ATCHESON, J.: A Norton County jury convicted Thomas Perkins of driving under the influence—his fourth violation of K.S.A. 2008 Supp. 8-1567 and, therefore, a felony—along with having a suspended driver's license and open containers of beer—those are misdemeanors. Perkins challenges the DUI and license suspension convictions on grounds that require us to venture into the realm of alternative means of committing criminal or traffic offenses. Per-

kins also appeals the way the district court imposed the mandatory fine for the DUI. We consider each of those contentions in that order. He does not ask that we review the open container conviction.

The issues present questions of law, making a detailed recitation of the facts unnecessary. We, therefore, offer a condensed account. On the evening of June 20, 2009, Perkins and a passenger had stopped and parked a pickup truck on the shoulder of Highway 283 in Norton County. As Highway Patrol Trooper Phil Henrickson pulled up behind the truck to check on the occupants, the passenger got out and moved toward the driver's side of the vehicle. According to Trooper Henrickson, he said he was going to take over driving because Perkins' back was bothering him. Nobody disputes that Perkins was quite intoxicated. Trooper Henrickson testified Perkins admitted as much at the scene. And Perkins provided highly incriminating performances on the field sobriety tests he attempted. During the booking process, Perkins made spontaneous statements to Trooper Henrickson consistent with his having been the driver of the pickup though they were short of an outright confession.

At trial, Perkins testified that the passenger, his stepson, had been driving the entire time and that the two of them switched places after parking the truck. According to Perkins, they had pulled over to clean up vomit he had deposited in the truck cab. In the course of doing so, they had gotten out of the truck, and Perkins had then sat down in the driver's seat. Perkins told the jury he didn't have much recollection of Trooper Henrickson or their interaction. Perkins' stepson testified that he had driven the pickup and parked on the shoulder. The jury didn't buy that version of events and convicted Perkins. He has timely appealed.

## THE DUI CONVICTION

The DUI charge lodged against Perkins accuses him of operating or attempting to operate a vehicle while under the influence of alcohol to the degree he could not do so safely, thereby violating K.S.A. 2008 Supp. 8-1567. Those are alternative means of unlawfully driving under the influence. See *State v. Stevens*, 285 Kan.

307, 316, 172 P.3d 570 (2007) (operating and attempting to operate present alternative means of committing the offense of DUI). That is, attempting to drive is enough to be convicted of the offense defined in K.S.A. 2008 Supp. 8-1567. And, of course, so is actually driving. The jury was instructed that it had to find, among other elements, that Perkins "drove or attempted to drive a vehicle" to convict.

The State need not elect one means or another in presenting its case to a jury or in requesting how the trial court instructs the jury. 285 Kan. at 309 (The State need not elect between attempting to operating and operating under K.S.A. 2006 Supp. 8-1567.). If a jury has been instructed on alternative means, each juror must be convinced beyond a reasonable doubt the defendant committed the offense. But the jurors need not agree on which of the alternative means has been proven. *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010). A general verdict of conviction is legally proper so long as the record contains sufficient evidence to support each means. *Wright*, 290 Kan. 194, Syl. ¶ 2; *Stevens*, 285 Kan. at 316.

Here, Perkins argues there was insufficient evidence to support a conviction for attempting to operate or drive the pickup truck. The lynchpin of Perkins' legal argument is how he defines an attempt under the DUI statute. There is no language in K.S.A. 2008 Supp. 8-1567 that supplies a specific definition. Perkins submits that allows him to import the definition of attempt from the provision of the Kansas Criminal Code used to establish attempts as a distinct type of crime, K.S.A. 21-3301.

When a party challenges the legal sufficiency of the evidence to support a verdict, we review the record in a light most favorable to the prevailing side, here the State. See *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009). We neither resolve conflicts in the evidence generally nor make credibility determinations specifically. *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). Perkins fashions his argument to conform to that view of the factual record; he says even accepting the best evidence for the State, the verdict cannot be upheld given the definition of attempts in K.S.A. 21-3301. His argument, then, presents a matter of statutory inter-

pretation and a question of law. The appellate courts have unlimited review of those issues. *State v. Jefferson,* 287 Kan. 28, 33, 194 P.3d 557 (2008).

Under K.S.A. 21-3301, an attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Perkins reasons that the jury concluded he drove the pickup truck and then parked on the shoulder of the highway. In turn, he could not have been guilty of an "attempt" to drive because he neither "failed" in that effort nor was he "prevented or intercepted" before he could and actually did drive.

The fundamental problem with the argument lies in its premise. There is no good reason to conclude the legislature intended the definition of "attempts" in the criminal code to be applied to the traffic offense of driving under the influence. Perkins really offers no explanation for his conclusion other than the implicit assumption it should be that way because both statutes use the word "attempt." But there are good reasons to reject that argument.

First, K.S.A. 21-3301 serves a purpose distinct from and ultimately incompatible with the reference to attempt in K.S.A. 2008 Supp. 8-1567. In the DUI statute, an attempt is treated as the legal equivalent of the completed offense and carries the same punishment. K.S.A. 2008 Supp. 8-1567. The legislature has the prerogative to define offenses in that way. The immediate purpose is to encompass an extremely wide range of conduct within the scope of the offense of DUI. The broad goal likely is to stanch the devastating costs drunk drivers inflict on society in terms of broken and lost lives and to deter at every opportunity that untoward conduct. See *State v. Compton,* 233 Kan. 690, 699-700, 664 P.2d 1370 (1983) (The court outlines the societal costs of drunk driving in a decision upholding the state's pioneering get-tough DUI legislation of the modern era.). In short, the legislature has determined defendants should get no dispensation simply because they can stagger to their vehicles and turn on the ignition but prove too drunk to shift from park to drive. That's enough to be successfully prosecuted for DUI.

But the criminal attempt statute, K.S.A. 21-3301, serves a different purpose. It codifies a species of crimes both separate and different from completed offenses. Attempts, as the statute states, entail incipient efforts to commit particular crimes that do not come to fruition for any number of reasons including the intervention of third parties such as law enforcement officers. K.S.A. 21-3301(a). In addition, the perpetrator "must intend to commit" the completed crime. K.S.A. 21-3301(a). Those attempts require a form of specific criminal intent, even if the completed crime requires only a general criminal intent or, presumably, no bad intent at all. *State v. Gaither*, 283 Kan. 671, 692, 156 P.3d 602 (2007) (An attempt under K.S.A. 21-3301 "relies on the definition of the underlying but uncompleted crime and requires a specific intent to commit the underlying crime."); *Clemons v. State*, 39 Kan. App. 2d 561, 566, 182 P.3d 730, *rev. denied* 286 Kan. 1176 (2008). And voluntary intoxication is a defense to an attempt under K.S.A. 21-3301 to the extent the consumption of drugs or alcohol prevents the defendant from forming that specific intent. *State v. Brown*, 291 Kan. 646, 654, 244 P.3d 267 (2011) (Attempts criminalized in K.S.A. 21-3301 are specific intent crimes to which voluntary intoxication may be a defense.); *State v. Gonzales*, 253 Kan. 22, 24, 853 P.2d 644 (1993) (Voluntary intoxication may be a defense if the defendant's "mental faculties" have been so impaired as to render him or her "incapable of forming the necessary specific intent required to commit the crime."). Generally, attempts are punished less severely than the analogous completed offenses. K.S.A. 21-3201(c)(1), (d)(1), (e), (f).

Applying the requirements of K.S.A. 21-3301 to an attempted DUI would undercut the purposes of K.S.A. 2008 Supp. 8-1567. Driving under the influence, like many traffic offenses, falls in the no-bad-intent category. *State v. Martinez*, 268 Kan. 21, Syl. ¶ 3, 988 P.2d 735 (1999). If K.S.A. 21-3301 were to control, however, an attempted DUI would require proof of a specific intent to drive while drunk. Nothing indicates the legislature had that in mind. It would be a peculiar thought: The completed offense of DUI would require no criminal or bad intent, but an attempted DUI would

require a specific state of mind to perform the prohibited act of driving drunk.

In turn, voluntary intoxication would be a defense to an attempted DUI if it negated that specific intent. What that would mean is someone really drunk—too drunk to get a car in gear, for example—could beat a charge of attempting to drive under the influence precisely because of his or her intoxication. Such a result might be the stuff of law school debate, but attributing it to the legislature is kind of loopy. And the courts refrain from seeing loopiness in legislative handiwork unless they have no other choice. *State v. Barnes*, 275 Kan. 364, Syl. ¶ 2, 64 P.3d 405 (2003) ("The legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results.").

There is another, independent reason the legislature did not intend to incorporate the criminal attempts statute into the DUI statute. The inclusion of the phrase "attempt to operate" in the definition of the DUI offense in K.S.A. 2008 Supp. 8-1567 would have been unnecessary and, thus, superfluous had the legislature meant the criminal attempts statute to govern. The provisions of K.S.A. 21-3301 apply to "the [failed] perpetration of a crime." In turn, a "crime" includes an offense "created by statute other than in this code." K.S.A. 21-3102(2). And a crime "is an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine . . . is authorized." K.S.A. 21-3105. Read in tandem, K.S.A. 21-3102(2) and K.S.A. 21-3105 establish the offense of DUI, as set forth in K.S.A. 2008 Supp. 8-1567, as a "crime."

Had K.S.A. 2008 Supp. 8-1567 contained no language regarding attempts at all, K.S.A. 21-3301 would have applied to criminalize an attempted DUI. Accordingly, the legislative decision to mention attempts specifically and to treat them identically to the completed crime must have been undertaken to change the default rule that would otherwise apply K.S.A. 21-3301 for that purpose. As we have said, the reference to attempts in K.S.A. 2008 Supp. 8-1567 would be wholly unnecessary and entirely vestigial if the legislature wanted K.S.A. 21-3301 to control. The accepted rules of statutory construction run counter to that result. See *Fisher v. Kansas Crime*

*Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage.").

We, therefore, believe the legislature both meant to act in a reasonable way when it referred to an attempt to operate a vehicle as being included in the offense of DUI outlined in K.S.A. 2008 Supp. 8-1567 and wasn't simply littering the statute with extra words. Accordingly, we reject Perkins' argument that the nature and scope of an attempted DUI is controlled by K.S.A. 21-3301.

To this point, of course, we have left unresolved what the legislature actually intended in K.S.A. 2008 Supp. 8-1567. But another rule of statutory construction shores up the omission nicely. Words of a statute generally should be given their usual and common meanings. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). Thus, the prohibition in K.S.A. 2008 Supp. 8-1567 that "[n]o person shall . . . attempt to operate" a vehicle encompasses those acts entailing "an effort to do [or] accomplish" that end. Merriam-Webster's Collegiate Dictionary 79 (11th ed. 2003) (defining "attempt"). While the word "attempt" may connote an unsuccessful effort, that is neither invariably true nor inherently part of the definition. See The Oxford American Desk Dictionary and Thesaurus 47 (2d ed. 2001) (defining "attempt" as "seek to achieve, complete, or master"); Webster's Third New International Dictionary 140 (1993) (The word "attempt" is "often used in venturous or experimental situations sometimes with implications of failure.").

For purposes of K.S.A. 2008 Supp. 8-1567, then, a driver who actually operates a vehicle necessarily also attempts (successfully) to do so. The converse would not necessarily be true; someone who attempts to operate a vehicle need not complete the act to violate K.S.A. 2008 Supp. 8-1567. On the facts here, the jury found Perkins drove the pickup truck before Trooper Henrickson arrived on the scene. That finding factually and legally establishes conduct sufficient to support the alternative means of attempting to operate for purposes of K.S.A. 2008 Supp. 8-1567. We, therefore, affirm the conviction.

The *Stevens* decision is not otherwise. In that case, the court rejected a defense argument that the State had to elect either an attempt theory or a completed act theory before submitting a DUI charge to the jury. *Stevens*, 285 Kan. at 309. The court then briefly discussed whether the evidence supported each means. In doing so, the court assumed without analysis or any formal determination that an attempted DUI would be governed by K.S.A. 21-3301. 285 Kan. at 318. That assumption worked for forensic purposes because it favors the defendant to a greater degree than does the actual statutory language of K.S.A. 2008 Supp. 8-1567. It also reflected *dicta* rather than a holding of the Supreme Court.

Similarly, the district court here instructed the jury on the attempt means using the language of K.S.A. 21-3301: "An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." The instruction gave Perkins more than his due and, therefore, does not entail any prejudicial error. Nor does it require we reach some different conclusion about the proper interpretation of the statutory language prohibiting the attempted operation of a vehicle under K.S.A. 2008 Supp. 8-1567. In other words, this court need not accept the premise of Perkins' legal argument on appeal because that's how the jury was instructed.

### THE CONVICTION FOR VIOLATING K.S.A. 2008 SUPP. 8-262

Perkins challenges the verdict convicting him of driving after his license had been suspended. Under K.S.A. 2008 Supp. 8-262, a person is guilty of a misdemeanor if he or she "drives a motor vehicle on any highway of this state at a time when [that] privilege . . . is canceled, suspended or revoked[.]" Perkins argues K.S.A. 2008 Supp. 8-262 establishes alternative means of committing that offense. We agree.

Perkins was charged in the complaint under each way of losing driving privileges: cancellation, suspension, and revocation. The jury was similarly instructed that to convict it had to find that his "driving privileges were canceled, suspended, or revoked by the division of motor vehicles[.]" As with the argument on the DUI

conviction, Perkins' position here ultimately rests on the interpretation and application of statutory language. It is a question of law permitting unfettered appellate review. *Jefferson*, 287 Kan. at 33.

The terms "canceled," "suspended," and "revoked" refer to statutorily distinct ways a person may lose driving privileges. They are not simply redundant or synonymous words for essentially the same conduct or status. See *State v. Simmons*, No. 102,900, unpublished decision filed March 25, 2011, slip op. at 5-6, *pet. for rev.* filed April 25, 2011 (pending) (Criminal damage to property is not an alternative means crime because the terms "injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use" of property reflect linguistic redundancy rather than different actions.). Each is established in a separate statute. K.S.A. 8-1408 (cancellation); K.S.A. 8-1457 (revocation); K.S.A. 8-1474 (suspension).

Generally, cancellation of a driver's license results from "some error or defect" in the license or because the recipient is not entitled to a license. K.S.A. 8-1408. But cancellation, with one exception, is "without prejudice," and the individual may apply for a new license at any time. K.S.A. 8-1408. The exception applies when a person fraudulently obtains a license in another name or allows someone else to use his or her license for identification. K.S.A. 8-260.

Revocation is the "formal termination" of a driver's license and the holder's privilege to drive in the state. K.S.A. 8-1457. A person may not have the license renewed or restored and must, after the revocation period, make application for a new license. K.S.A. 8-1457. Persons found to be habitual violators under K.S.A. 8-285, for example, have their licenses and privileges revoked for 3 years. K.S.A. 8-286. Revoked drivers must physically relinquish their licenses. K.S.A. 2008 Supp. 8-257.

Suspension is the "temporary withdrawal" of a person's license and driving privileges. K.S.A. 8-1474. For example, a person's license and privileges are to be suspended for refusing or failing a blood-alcohol test requested in conjunction with an arrest for driving under the influence. See K.S.A. 2008 Supp. 8-1001(k); K.S.A. 2008 Supp. 8-1014. Suspended drivers must physically relinquish

their licenses but may request reissuance of the license after the expiration of the term of suspension. K.S.A. 8-241; K.S.A. 2008 Supp. 8-257. Unlike a suspended or revoked driver, a person whose license has been cancelled need not surrender the license itself under K.S.A. 2008 Supp. 8-257.

Under the licensure scheme for drivers, the loss of privileges through cancellation, suspension, or revocation are sufficiently different to constitute alternative means of violating K.S.A. 2008 Supp. 8-262. Notably, suspension is a temporary deprivation of privileges, while revocation amounts to an absolute loss requiring the person to apply anew for licensure. A person may have his or her license and driving privileges suspended or revoked as punishments for prohibited conduct, *e.g.*, refusing a breath test or becoming an habitual offender. But they are not imposed interchangeably. In contrast, cancellation of a driver's license includes administrative irregularities in the issuance of the license in the first instance. In prosecuting a violation of K.S.A. 2008 Supp. 8-262, the State, therefore, must either submit one means of committing the offense to the jury or offer sufficient evidence to support a conviction based on each means.

In this case, the State submitted evidence showing Perkins' driving privileges were suspended. He does not contest the sufficiency of the evidence for that means. But the State offered nothing to show that Perkins' privileges had been cancelled or revoked. The State does not argue otherwise.

The State contends alternative means of committing an offense depend solely on actions or conduct of a defendant in violating the law. Here, however, the State submits Perkins' status as a suspended driver resulted from a determination and order of the Kansas Division of Motor Vehicles rather than his own conduct. The same would be true, the State says, if his driving privileges had been cancelled or revoked. The offender's conduct—driving—would be common to all three. The State, therefore, concludes that having a cancelled, suspended, or revoked driver's license amounts to a single means of violating K.S.A. 2008 Supp. 8-262.

The State cites no authority recognizing and supporting the distinction it makes between conduct and status in determining

whether an offense may be committed through alternative means. The argument seems to prove too little. First, of course, Perkins' suspension was the direct product of his own (mis)conduct. The Kansas Department of Revenue did not take away his driving priv-ileges based on something arbitrary or beyond his control—this is a month beginning with the letter J, so we'll suspend 5 people a day who have the initials T.P. Perkins earned that status because of his own actions.

Second, the State's theory does not hold up if applied to other offenses. For example, a person commits aggravated escape from custody under K.S.A. 21-3810 if he or she flees while facing or having been convicted of a felony or upon commitment to a facility for treatment as a sexual predator, among other circumstances. Those are alternative means of violating that statute dependent upon the defendant's "status," at least as the State would have us apply the term. Similarly, criminal possession of a firearm can be committed by alternative means including having a weapon follow-ing conviction for a person felony or following adjudication as a mentally ill person requiring involuntary commitment. K.S.A. 2008 Supp. 21-4204(a)(2), (7). Again, those means depend, in part, upon the defendant's status, in addition to his or her conduct. The nature of the status differs, although the conduct—possession of a fire-arm—doesn't. But they remain alternative means of violating the statute. One means of committing rape entails nonconsensual in-tercourse with a victim who because of "mental deficiency or dis-ease" cannot give consent. K.S.A. 2008 Supp. 21-3502(a)(1)(C). The victim's condition has nothing to do with the defendant's con-duct, but that presents an alternative means of committing the crime.

The State faces no particularly imposing burden in prosecuting offenses under K.S.A. 2008 Supp. 8-262 because of this rule. Typ-ically, the State offers the certified driving record of the defendant showing him or her to be suspended, revoked, or cancelled, as the case may be. The State presumably obtains the certified record before trial, and the prosecutor, therefore, knows full well which of the alternative means the evidence supports. Making an election

to proceed on that means alone presents little in the way of risk or uncertainty.

We find that the State failed to present any evidence against Perkins to support a conviction under K.S.A. 2008 Supp. 8-262 on the alternative means of driving with a cancelled or revoked license. Perkins' conviction, therefore, rests on an insufficient factual basis. The conviction is reversed, and we enter a judgment of acquittal.

### Assessment of Mandatory Fine on the DUI Conviction

The trial court imposed a mandatory fine of $2,500 on Perkins as part of the punishment for the felony DUI. But the trial court did not consider the option of allowing him to perform community service instead of paying the fine. In a decision issued after Perkins was sentenced, the Kansas Supreme Court held that, at sentencing, a district court must consider allowing a defendant facing a mandatory fine under K.S.A. 2009 Supp. 8-1567 to substitute community service. *State v. Copes*, 290 Kan. 209, Syl. ¶ 7, 224 P.3d 571 (2010).

The State concedes error on this point in light of *Copes*. We, therefore, vacate the imposition of the fine and remand so that the trial court may consider the community service option if the fine or some portion of it remains unpaid. Depending on the circumstances shown on remand, the trial court may again impose the fine or may permit Perkins to perform community service work as an alternative to payment.

### Conclusion

We affirm Perkins' conviction for DUI. In reaching that conclusion, we reject his argument that an attempted DUI under K.S.A. 2008 Supp. 8-1567 should be defined and governed by K.S.A. 21-3301, establishing attempts as crimes distinct from completed offenses. That would be contrary to the legislative purpose of making an attempt to drive under the influence the legal equivalent to actually doing so.

We reverse Perkins' conviction under K.S.A. 2008 Supp. 8-262 and enter a judgment of acquittal because the State proceeded on the alternative means that Perkins' driver's license had been can-

celled, revoked, and suspended but presented evidence showing only that the license had been suspended.

We vacate the mandatory fine imposed on Perkins for the DUI conviction and remand to allow the district court to consider community service as an alternative to payment, as required by *Copes*.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.