NOT DESIGNATED FOR PUBLICATION

No. 119,380

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFERY ALLEN BISHOP,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed June 28, 2019. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: Jeffery Allen Bishop appeals the denial of his motion to suppress evidence. Bishop claims Traci Stallings, who spent the night in the hotel room with him and his wife, lacked both actual and apparent authority to consent for law enforcement officers to enter the room where methamphetamine and other drug-related items were found. He also claims the court erred when it enhanced his sentence because the hotel was within 1,000 feet of a school. Generally anyone who is an overnight guest in a hotel room has a reasonable expectation of privacy. We find no error by the district court as the record reflects Stallings, as an overnight occupant of the room, had both actual and

1

apparent authority to voluntarily allow the law enforcement officers the right to enter the room. We also find the sentence enhancement applies since the hotel room was within 1,000 feet of a school. We affirm.

FACTS

In August 2017, Detective Kevin Shireman and Officer Dominick Vortherms of the Emporia Police Department responded to a call from employees at a Comfort Inn who reported a "skunky smell" and a lot of activity coming from a particular room the previous night. The Comfort Inn is located within 1,000 feet of Emporia High School and Emporia Middle School. The properties share a property line. The officers arrived at the hotel at around 9:50 a.m. Employees told the officers the room was registered to a man with the last name of Bishop and two women were also in the room with him. The officers went to the room in question but smelled no odor.

Vortherms knocked at Bishop's hotel room door and a woman later identified as Traci Stallings answered. Shireman believed Stallings' clothing appeared to be pajama-type clothing. The district court, after viewing body camera footage, described the clothing as leggings with a shirt that could be suitable for all occasions. Vortherms asked if they could step inside the room to talk and Stallings gave permission. The officers did not sense any hesitancy or reluctance on the part of Stallings to allow their entry into the room, so they entered the room and stood just inside the doorway. Stallings held the door open and Shireman looked at the mirror just inside the door and observed Bishop and his wife in the bed. The officers asked to speak to the people in the bed, and Stallings asked Vortherms to hold the door open while she woke Bishop and his wife. Prior to waking Bishop, Stallings told the officers the room was rented by Bishop.

Shireman walked to the bed to talk to Bishop and he ran a check on Bishop's identification while Vortherms held the door. While Shireman talked to Bishop,

2

Vortherms noticed a syringe with an orange cap along with a knife on the nightstand next to the bed. Shireman then sought and obtained a search warrant. During the subsequent search, Emporia police found additional syringes, approximately 50 grams of methamphetamine, and around $20,000 in cash. The State brought multiple charges against Bishop, including possession of methamphetamine with intent to distribute within 1,000 feet of school property under K.S.A. 2017 Supp. 21-5705(a)(1), (d)(3)(C), and (d)(5).

Bishop filed a motion to suppress the evidence claiming it resulted from an illegal search under the Fourth Amendment of the United States Constitution. The suppression hearing began with the district court viewing approximately 16 minutes of Vortherms' body camera footage which showed his and Shireman's actions and dialogue shortly before and after entering Bishop's hotel room. The body camera footage is not included in the record on appeal. After viewing the footage, both Shireman and Vortherms testified.

The district court denied the motion to suppress. The court found Stallings expressly consented to admitting the officers into the room and acknowledged the issue of consent hinges on whether Stallings had the authority to consent. The district court interpreted the interaction between Stallings, the Bishops, and the officers as seen in the body camera footage as "one of the most friendly encounters that I've seen for a long time on a video of this type." The court believed Stallings' status as an overnight guest in the room was readily apparent, and "there would have been no question about that." The district court found Stallings' status as an occupant of the hotel room gave her the same right to consent to the officers' entry as either Bishop or Bishop's wife. Referencing the body camera footage in describing Stallings' consent, the district court said: "I think the video pretty much tells all in this case, my observation of the video is that there was really no hesitation on the part of Ms. Stallings to admit the officers into the room."

3

ANALYSIS

*Motion to suppress was properly denied*

Bishop argues Stallings lacked both actual and apparent authority to allow police officers into the hotel room, thus all of the evidence should have been suppressed. When an appellate court reviews a district court's ruling on a motion to suppress evidence, the review has two components. The appellate court reviews the district court's factual findings to determine if those facts are supported by substantial competent evidence. The appellate court reviews the ultimate legal conclusion using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Substantial evidence refers to legal and relevant evidence a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

*Stallings had actual authority as an occupant of the room*

The officers in this case did not possess a search warrant when they entered the hotel room, and a warrantless search is per se unreasonable unless it falls within one of the exceptions to the warrant requirement recognized in Kansas. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). The district court found the consent exception applied under these facts. To establish valid consent, the State must prove: (1) clear and positive testimony consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion, express or implied. *State v. Cleverly*, 305 Kan. 598, 613, 385 P.3d 512 (2016). The State has the burden of establishing the scope and voluntariness of the consent to search. Whether consent is voluntary is an issue of fact which appellate courts review to determine if substantial competent evidence supports the trial court's findings. *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015). Here, the district court viewed the police officer's body camera footage and heard testimony from Shireman and Vortherms, both of whom entered the hotel room. The record on appeal does not include

the police body camera footage, but the district court specifically addressed the footage and interpreted Stallings' consent for the officers' entry into the room saying:

"The officers asked if they could step into the room. And my observation of the video, and I think the video pretty much tells all in this case, my observation of the video is that there was really no hesitation on the part of Ms. Stallings to admit the officers to the room. She readily responded to the request. She did not indicate to them verbally or otherwise any insecurity on her part or any hesitancy to allow."

On appeal, Bishop does not contest Stallings' act of consent but instead limits his suppression argument on whether she had authority to consent. "'Consent may be obtained from the individual whose property is searched, or in certain instances, from a third party who possesses either actual authority or apparent authority to consent to the search.'" *State v. Boggess*, 308 Kan. 821, 826-27, 425 P.3d 324 (2018) (quoting *United States v. Cos*, 498 F.3d 1115, 1124 [10th Cir. 2007]). The Kansas Supreme Court in *Boggess* relied on language from the United States Supreme Court's interpretation of third party consent from *United States v. Matlock.* 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). *Matlock* stated:

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 U.S. at 171.

*Matlock* bases a third party's common authority on "mutual use of the property by persons generally having joint access or control." 415 U.S. at 171 n.7. In analyzing a consenting party's joint access and control, it should be "reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to

be searched." 415 U.S. at 171 n.7. In a later case, the United States Supreme Court explained the rights of overnight guests include a reasonable expectation of privacy in places they sleep such as a hotel room. *Minnesota v. Olson*, 495 U.S. 91, 99, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990).

Therefore, the joint use of a hotel room by an overnight guest provides the guest with a reasonable expectation of privacy that enables them to object to a search, and this expectation provides them with actual authority to consent to a search. In short, when a reasonable expectation of privacy exists, the powers to object and consent to searches are equal. See *Matlock*, 415 U.S. at 171 n.7 (mutual use and access permits a party to consent to searches of jointly used areas); *Olson* 495 U.S. at 99 (overnight guests in a hotel room have a reasonable expectation of privacy); *Boggess*, 308 Kan. at 826-27 (third parties who possess actual or apparent authority may consent to a search).

Another panel of this court addressed a third party's expectation of privacy in a hotel room in *State v. Gonzalez*, 32 Kan. App. 2d 590, 85 P.3d 711 (2004). Both the State and Bishop cite *Gonzalez* as evidence supporting their theory of Stallings' authority or lack of authority to consent. In *Gonzalez*, police arrested the defendant for drug possession in the bathroom of a hotel room rented by another person. No evidence indicated Gonzalez was an invited overnight guest of the room's registered occupant. He was not dressed for sleeping, was not near the bed when police entered, and the hotel's management was not aware he was staying in the room. The *Gonzales* panel found Gonzalez lacked standing to object to the police's entry and search of the motel room. 32 Kan. App. 2d 596-97. Here, Bishop relies on the language in *Gonzalez* which says: "a defendant cannot establish a reasonable expectation of privacy in a hotel or motel room which is registered to another person absent a showing of a relationship with the registered guest." 32 Kan. App. 2d 594. (citing *United States v. Cantley,* 130 F.3d 1371, 1377-78 (10th Cir. 1997). Bishop asserts no evidence existed showing a relationship between himself and Stallings.

6

The State counters this interpretation of *Gonzalez* by pointing out Stallings was in fact an overnight guest, which provided Stallings with an expectation of privacy the defendant in *Gonzalez* lacked. The panel in *Gonzalez* found the defendant lacked standing to object to the search because he lacked an expectation of privacy, and the panel based this conclusion in part on Gonzalez not being an overnight guest. 32 Kan. App. 2d 594-95. Bishop counters by arguing this passage was merely dicta. He argues the key holding from *Gonzalez* was a third party must have some relationship with the person to whom a room is registered, beyond simply being in the room, to be empowered to consent to a law enforcement search.

This argument fails because it overlooks the independent privacy interests of third party guests as mentioned in *Matlock* as well as privacy interests of overnight guests in hotel rooms as mentioned in *Olson.* Bishop admits Stallings was his overnight guest, but he fails to elaborate on why the *Gonzalez* distinction should be ignored. The uncontested fact of Stallings staying in the room as an overnight guest disproves Bishop's assertion their relationship did not go beyond her "simply being in the room." Additionally, Stallings' authority to consent does not result from a mere property interest such as being listed on the hotel room registration but from her joint access and control of the room itself. See *Matlock*, 415 U.S. at 171 n.7. As an overnight guest, especially a guest trusted to be present when the official renter of the room sleeps, Stallings shared joint access and mutual use of the room. Stallings' overnight stay in the room triggered the third-party consent doctrine.

The district court found Stallings possessed actual authority to consent to the police entering the hotel room. The court believed her status as an occupant and overnight guest was "readily apparent" and there "would have been no question about that." The evidence relied upon consisted of officers being advised by hotel employees the room was rented to a male (Bishop), with two women also staying in the room. The officers entered the room with Stallings' consent the next morning after all three had

spent the night in the room. The district court's decision reflects Stallings was a joint occupant of the hotel room. Therefore, as a joint occupant, the other individuals in the room placed themselves in peril of Stallings admitting law enforcement officers into the room. As such, substantial evidence and extensive caselaw supports the State's assertion Stallings—as an overnight occupant of the room—had actual authority to consent to police entering the hotel room.

Since we have determined Stallings had actual authority to allow the officers to enter the room, we deem it unnecessary to address Bishop's argument Stallings lacked apparent authority.

*Sentence enhancement was appropriately given*

Bishop next argues his possession of 50 grams of methamphetamine within 1,000 feet of two nearby schools was merely a "fortuitous" occurrence. Accordingly, he believes the sentencing enhancement found in K.S.A. 2018 Supp. 21-5705(d)(5) should not apply to him. He asserts the State should have presented evidence to show the application of the enhancement supported the Legislature's intent in protecting the community by keeping schools drug free. Bishop cites to *State v. Barnes*, 275 Kan. 364, 64 P.3d 405 (2003), where our Supreme Court declined to apply the sentencing enhancement because doing so would be contrary to the Legislature's intent. Both parties agree this brings into question the sufficiency of the evidence.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

8

Bishop's argument fails because he bases his argument for the enhancement statute's application on *Barnes*, which has an explicitly narrow holding and is factually distinguishable from his own case. In *Barnes*, a law enforcement officer saw a suspicious car stopped near houses known for narcotics and followed the car for three to five minutes before stopping it in a fast-food parking lot. The car passed by an elementary school while driving this route. Law enforcement discovered drugs inside the defendant's car after stopping it, and the State charged the defendant with possession of methamphetamine with intent to sell within 1,000 feet of a school zone. Prior to trial, the district court granted the defendant's motion to dismiss the charge, finding mere passage through a school zone was insufficient to charge a defendant with a school zone violation. In supporting its interpretation of the school zone statute, the court held the Kansas Legislature did not intend the statute to apply to "an individual not apprehended within the school zone and where uninterrupted passage in an automobile through the school zone was fortuitous." 275 Kan. at 375. It ended by expressly stating: "This is a narrow holding based upon unique facts. Our decision should not be read to be a sweeping pronouncement that will unreasonably impact upon law enforcement's efforts to maintain drug-free school zones." 275 Kan. at 375.

Bishop's case is factually distinguishable from *Barnes*, and the narrow holding of *Barnes* further eliminates its applicability to his case. The defendant in *Barnes* coincidentally drove his car past a school. Realistically, Barnes was within 1,000 feet of the school only for the time it took to move his car through the protected school zone. Bishop asserts *Barnes* requires the State to "prove that the possession of the drugs within the zone creates the sort of danger that the enhancement was intended to address." In saying this, Bishop misapplies *Barnes*. Instead, *Barnes* held an absurd result would follow if the school sentencing enhancement statute could be applied to a defendant who coincidentally drove past a school and was arrested shortly thereafter outside the school zone. The Supreme Court only addressed the legislative intent to prevent this absurd result and it created a narrow exception to the statute in response. 275 Kan. at 375. The

difference between a car and a hotel room regarding mobility and duration of time must be considered. Staying in a hotel room overnight shows deliberation instead of coincidence. Bishop was also in possession of a large amount of methamphetamine and cash. The fact the court in *Barnes* expressly limited its holding to focus narrowly on unique facts eliminates any remaining application to Bishop's case. See 275 Kan. at 375. The district court did not err in applying the sentencing enhancement for possession of methamphetamine within 1,000 feet of a school.

Affirmed.